[No. G044493. Fourth Dist., Div. Three. Sept. 12, 2011.]

THE PEOPLE, Plaintiff and Appellant, v.
BERNARD GARI, Defendant and Respondent.

512

**COUNSEL**

Tony Rackauckas, District Attorney, and George Turner, Deputy District Attorney, for Plaintiff and Appellant.

Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**FYBEL, J.—**

## INTRODUCTION

Defendant Bernard Gari became a naturalized citizen of the United States on October 4, 1989. That same day, in support of his petition for citizenship he had previously filed on March 14, 1988, he filed form N-445A in which he asserted he had not, inter alia, "knowingly committed any crime or offense, for which [he had] not been arrested" since filing the petition.

In May 1993, defendant pleaded guilty to 10 counts of child molestation; he admitted he committed five offenses against S.S. on five separate occasions between January 1, 1989, and April 21, 1991, and admitted he committed five offenses against A.S. on five other separate occasions between January 1, 1989, and July 30, 1991 (collectively, the guilty pleas). The trial court accepted the guilty pleas and sentenced defendant to a six-year prison term.

In April 2010, federal authorities initiated proceedings to revoke defendant's citizenship on the ground "[t]wo of the ten counts of child molestation to which [defendant] pleaded guilty occurred before October 4, 1989, the day [he] submitted his N-445A" and took the oath of allegiance.

Defendant filed a motion in Orange County Superior Court, in which he sought to withdraw the guilty pleas, arguing he was not warned, and it was not otherwise foreseeable, that his citizenship might be revoked as a consequence of the guilty pleas. The trial court granted the motion as to the counts

that allegedly occurred before defendant filed form N-445A, and the district attorney (the prosecution) appeals.

We reverse. As we explain in detail *post*, whether defendant's motion is construed as seeking statutory relief, as constituting a petition for writ of error *coram nobis*, or as seeking equitable relief based on the argument the court had "inherent power" to provide such relief, defendant's motion was without merit. Defendant has otherwise failed to cite any legal authority supporting the trial court's order. We therefore conclude the trial court erred by granting the motion.

## BACKGROUND

In October 1987, defendant filed an application to file a petition for naturalization as a citizen of the United States. Upon the approval of his application, on March 14, 1988, defendant filed a petition for naturalization (the petition).[1] On October 4, 1989, defendant submitted form N-445A to the federal authorities. On form N-445A, defendant checked the box marked "No" next to the question whether, after the date he had filed the petition, defendant had "knowingly committed any crime or offense, for which [he had] not been arrested; or [if he had] been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations." That same day, defendant took the oath of allegiance and became a naturalized citizen.

In August 1991, defendant was charged in a felony criminal complaint, filed in Orange County Superior Court, with committing 10 counts of child molestation in violation of Penal Code section 288, former subdivision (a),[2] from January 1989 through July 1991. As relevant to the issues raised in this appeal, two of the charged offenses (counts 1 & 6) were alleged in the

---

[1] Approval to move forward with the petition was suspended due to defendant's "failure to reveal two arrests for alien smuggling in 1979 and 1980." Defendant "submitted a written, sworn statement to the INS [(Immigration and Naturalization Service)] stating that in 1979 he was charged with alien smuggling" and that he was also cited by the City of Orange in 1988 for disturbing the peace.

[2] The version of Penal Code section 288, subdivision (a), in effect in 1991, provided: "Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six, or eight years."

complaint to have occurred "[o]n or about January, 1989 through June, 1989," and two other charged offenses (counts 2 & 7) were alleged to have occurred "[o]n or about July, 1989 through December, 1989."

In May 1993, defendant pleaded guilty to all 10 counts. The record includes a form entitled "Guilty Plea in the Superior Court" (guilty plea form), which bears the signatures of defendant and his attorney. As to the factual basis for the guilty pleas, defendant stated on the guilty plea form: "On 5 separate occas[]ions between 1-1-89 and 4-21-91 in Orange County I committed lewd acts with S[.]S. a girl under the age of 11. On 5 other separate occas[]ions between 1-1-89 and 7-30-91 I committed lewd acts with A[.]S., a girl under 11, in Orange County." The guilty plea form also contained defendant's initials inside a box next to the following statement: "I understand that if I am not a citizen of the United States the conviction for the offense charged may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." In the paragraph immediately above defendant's signature, the guilty plea form stated: "I declare under penalty of perjury that I have read, understood, and personally initialed each item above and discussed them with my attorney, and everything on the form is true and correct."

The trial court accepted the guilty pleas and sentenced defendant to a six-year prison term.

Nearly 17 years later, in April 2010, federal authorities filed a complaint in federal court (the federal complaint), seeking the revocation of defendant's citizenship. The federal complaint was supported by the affidavit of a special agent of the United States Immigration and Customs Enforcement and the United States Department of Homeland Security (the affidavit). In the affidavit, the special agent declared that defendant knowingly committed the crime of child molestation after he filed the petition and before he submitted form N-445A, and, thus, defendant's representation on form N-445A that he had not knowingly committed an offense since he filed the petition was false. In addition, the affidavit stated that as an applicant for naturalization pursuant to section 316(a) of the Immigration and Nationality Act (8 U.S.C. § 1427(a)), defendant "was required to prove that he was a person of good moral character from October 30, 1982, five years before he filed his Application for Naturalization, until the time he became a naturalized citizen on October 4, 1989 [] (i.e. the statutory period)." The affidavit further stated: "Because [defendant] knowingly committed, during the statutory period, and was convicted of molesting a child under the age of 14, an offense that is both an aggravated felony and a crime involving moral turpitude, he would not have [been] able to prove that he was a person of good moral character and that he was eligible for naturalization."

In August 2010, defendant filed a motion in Orange County Superior Court, in which he sought to withdraw the guilty pleas and requested an order vacating the judgment of conviction (the motion). In the memorandum of points and authorities, defendant argued that he was not sufficiently warned that the guilty pleas might result in the revocation of his citizenship, as such a consequence was unforeseeable. Defendant's declaration, filed in support of the motion, stated he pleaded guilty "to crimes occurring at times when [he] did not actually commit them." He further stated in his declaration that at the time of the guilty pleas, he was "entirely unaware that it might have immigration consequences since [he] was a citizen" and was never otherwise advised by his attorney. Defendant also asserted: "Had I been . . . advised of the potential immigration consequences, . . . I would not have plead[ed] to those crimes, which I did not commit, which occurred before I was a citizen."

At the hearing on the motion, the trial court framed its understanding of the questions presented by the motion, as follows: "[B]asically we are dealing with two issues. Issue number one, is the court legally compelled to withdraw the defendant's pleas; and number two, if the court is not legally compelled to withdraw the defendant's pleas, as a matter of equity and fairness, should the court withdraw those pleas?" The prosecutor called defendant to testify and asked him: "[W]hen did you figure out that, according to you now, you don't believe you did the crimes that happened before you were naturalized? When did you figure that out?" Defendant responded: "The timing was brought up when this immigration document showed up at my door that they were trying to revoke. Before that, there had been no need for any timing to conclude or debate, to base it on—base it on when it happened or when the—so the timing was at the time that I received my document. I had been living a perfect, clean social life and it's a time that was put in question."

Defendant testified that at the time he pleaded guilty, his brother had recently died of cancer. The court requested further evidence as to the equitable circumstances involved in the case, by stating: "With respect to the . . . equity charge, the court would find it helpful to know what the defendant has been doing for the last seventeen years." Defendant testified that since completing his six-year prison sentence, he had been gainfully employed until he broke his neck, he has lived a "clean life,"[3] he is his mother's caregiver, and he has two children.

At the hearing, the trial court stated it was not "legally compelled" to grant the motion. The court, however, granted the motion as to withdrawing the

---

[3] At the time of the hearing on the motion, defendant had been charged with a misdemeanor.

guilty pleas to those counts that carried immigration consequences (counts 1, 2, 6 & 7) "as a matter of equity and fairness."[4] The prosecution appealed.

## DISCUSSION

In its opening brief, the prosecution argues the trial court's postjudgment order granting the motion was without any legal support and thus erroneous. We have reviewed the motion and observe that defendant did not clearly identify the legal principles or authority upon which he asserted the motion ought to have been granted. The motion included a wide-ranging discussion of Penal Code section 1016.5 and the writ of error *coram nobis*.[5] In his respondent's brief, defendant jettisons any argument the court's order granting the motion found support in section 1016.5 or that the motion constituted a petition for a writ of error *coram nobis* that the court should have granted. Instead, defendant argues the trial court properly granted the motion by exercising its "inherent power" in equity to vacate the judgment of conviction as to counts 1, 2, 6, and 7. Defendant cites no legal authority to support the trial court's order granting the motion on the basis of "equity and fairness."

As we explain in detail *post*, whether the motion is construed as seeking statutory relief under Penal Code section 1016.5, constituting a petition for writ of error *coram nobis*, or seeking equitable relief based on the argument the court had "inherent power" to provide such relief, the motion was without merit. We therefore conclude the trial court erred by granting the motion.

### I.

### Penal Code Section 1016.5 Does Not Support the Trial Court's Order.

Penal Code section 1016.5, subdivision (a) provides: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are *not* a citizen, you are hereby advised that conviction of the

---

[4] The trial judge was the same judge who accepted the guilty pleas in 1993.

[5] The motion also mentioned habeas corpus relief without making any argument as to whether defendant might be entitled to such relief; defendant does not mention habeas corpus relief in his respondent's brief on appeal. In *People v. Villa* (2009) 45 Cal.4th 1063, 1066, 1069 [90 Cal.Rptr.3d 344, 202 P.3d 427], the California Supreme Court held that a person in the custody of federal immigration authorities is ineligible for relief by way of a writ of habeas corpus from a state court if his or her state sentence, probation, and parole have been completed. Defendant does not contend his sentence, probation, or parole from the charged offenses is incomplete or that he otherwise remains in state custody.

offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.)

Although the motion contained a lengthy discussion of Penal Code section 1016.5, defendant does not argue on appeal that here section 1016.5 was violated. Indeed, the guilty plea form signed by defendant contains the admonishment required by section 1016.5 and was initialed by defendant.

Defendant contends the Penal Code section 1016.5 admonishment did not hold any meaning for him because he was a citizen at the time he pleaded guilty to the charged offenses and the admonishment solely warned of the immigration consequences noncitizens might face. In the trial court, defendant thus proposed an unprecedented extension of section 1016.5, beyond its express limitations, to require a trial court to warn a criminal defendant that a guilty plea might jeopardize his or her citizenship status because such a plea might be inconsistent with prior representations he or she made in applying for citizenship. In the motion, defendant proposed: "[T]he necessary admonition is that 'if you are a naturalized citizen your citizenship may be revoked and you may be deported even 10 to 20 years after this plea.' "

■ Defendant's proposed admonition is inaccurate and incomplete. While a noncitizen who pleads guilty to certain offenses potentially faces immigration consequences simply because he or she committed such offenses, a citizen who pleads guilty to the same offenses does not face the same consequences. Here, defendant's citizenship status is in jeopardy, not because he pleaded guilty to the charged offenses, but because he failed to disclose the commission of those offenses to the federal authorities on form N-445A in support of the petition. Defendant has not cited any statute or other legal authority, and we have found none, which would support, much less require, the trial courts to provide the admonishment proposed by defendant. (See *People v. Limon* (2009) 179 Cal.App.4th 1514, 1519 [102 Cal.Rptr.3d 580] ["the courts cannot second-guess the way in which the Legislature fashions a statutory remedy, since that is a public policy issue properly left to the Legislature"].) Thus, the order granting the motion does not find support in Penal Code section 1016.5.

## II.

### DEFENDANT DID NOT MEET THE REQUIREMENTS FOR ISSUANCE OF A WRIT OF ERROR *CORAM NOBIS*.

In the motion, defendant repeatedly suggested that the trial court could vacate the judgment of conviction by construing the motion as a petition for

writ of error *coram nobis*. In his respondent's brief on appeal, however, defendant abandoned any argument the trial court could have construed the motion as a petition for writ of error *coram nobis*, by stating: "Both in the trial court and now on appeal the People have attempted to re-characterize [defendant]'s motion as proceeding by writ of error *coram nobis*. . . . However neither [defendant] nor the trial court characterized these proceedings as such and the trial court specifically said it was holding a hearing on a 'motion to withdraw the guilty pleas.' " As we explain *post*, the trial court's order does not find support by construing the motion as a petition for such a writ.

In *People v. Kim* (2009) 45 Cal.4th 1078, 1092–1093 [90 Cal.Rptr.3d 355, 202 P.3d 436] (*Kim*), the California Supreme Court stated: "The seminal case setting forth the modern requirements for obtaining a writ of error *coram nobis* is *People v. Shipman* (1965) 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993]. There we stated: 'The writ of [error] *coram nobis* is granted only when three requirements are met. (1) Petitioner must "show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment." [Citations.] (2) Petitioner must also show that the "newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial." [Citations.] This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner "must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . ." ' [Citation.] These factors set forth in *Shipman* continue to outline the modern limits of the writ."[6]

Here, defendant failed to satisfy the first requirement by showing the existence of a newly discovered fact which, had it been known, would have prevented rendition of the judgment of conviction. The Supreme Court explained: "For a newly discovered fact to qualify as the basis for the writ of error *coram nobis*, we look to the fact itself and not its legal effect. 'It has often been held that the motion or writ is not available where a defendant voluntarily and with knowledge of the facts pleaded guilty or admitted alleged prior convictions because of ignorance or mistake as to the legal effect of those facts.' " (*Kim, supra*, 45 Cal.4th at p. 1093.) Furthermore, "[n]ew facts that would merely have affected the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make

---

[6] The Supreme Court noted "the narrowness of the remedy" afforded by a writ of error *coram nobis*. (*Kim, supra*, 45 Cal.4th at p. 1093.)

different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment." (*Id.* at p. 1103; see *id.* at p. 1095; see, e.g., *People v. Ibanez* (1999) 76 Cal.App.4th 537, 546 [90 Cal.Rptr.2d 536] [writ of error *coram nobis* found unavailable because the defendant's "ignorance regarding the potential for civil commitment under the [Sexually Violent Predator Act] is a legal, not a factual, question"].)

Defendant does not identify any new facts that were unknown to him at the time he pleaded guilty to the charged offenses. Instead, defendant asserts he pleaded guilty to the charged offenses without paying heed to the dates the prosecution alleged he had committed them because he lacked knowledge of the legal effect of pleading guilty to those offenses might have on his citizenship status. In the motion, defendant asserted that he did not even commit count 1, 2, 6, or 7, and, if he did, he did not commit them within the statutory time period referenced in the federal complaint and the affidavit. Whether and when defendant committed those offenses are facts of which defendant had knowledge when he pleaded guilty to the charged offenses. These facts, therefore, do not qualify as newly discovered facts unknown to defendant at the time he pleaded guilty, which would support error *coram nobis* relief.

In *Kim*, the defendant invited the Supreme Court to expand "the traditionally narrow limits of the writ of error *coram nobis*" by arguing that "some form of postconviction remedy is necessary to ameliorate the harshness of the situation in which fundamental constitutional violations have occurred but will go unremedied because the offender is now out of custody and unable to seek relief on habeas corpus." (*Kim, supra,* 45 Cal.4th at pp. 1104–1105.) The Supreme Court rejected the defendant's invitation on the grounds (1) "the weight of authority in this state holds that the writ of error *coram nobis* ' "is not broad enough to reach every case in which there has been an erroneous or unjust judgment on the sole ground that no other remedy exists, but it must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial and were unknown to the court when the judgment was entered, but which, if known, would have prevented the judgment" ' "; (2) criminal defendants have ample opportunities to challenge the correctness of the judgments against them by having the right under Penal Code section 1018 to move to withdraw a plea "at any time before judgment" for good cause shown, appealing from a judgment of conviction, filing a petition for a writ of habeas corpus "during the time of actual or constructive custody," or seeking a pardon from the Governor; and (3) "when these established remedies have proved inadequate, the Legislature has enacted statutory remedies to fill the void" by, for example, authorizing under Penal Code section 1016.5 a motion to withdraw a guilty plea on the ground the trial court failed to admonish the accused of immigration consequences. (*Kim, supra,* at pp. 1105–1106.)

The Supreme Court stated: "As the foregoing examples indicate, the Legislature has been active in providing statutory remedies when the existing remedies such as habeas corpus have proven ineffective. [Penal Code s]ection 1016.5 especially shows the Legislature's concern that those who plead guilty or no contest to criminal charges are aware of the immigration consequences of their pleas. Because the Legislature remains free to enact further statutory remedies for those in defendant's position, we are disinclined to reinterpret the historic writ of error *coram nobis* to provide the remedy he seeks." (*Kim, supra*, 45 Cal.4th at p. 1107.) The Supreme Court in *Kim* ultimately held that the writ of error *coram nobis* was not available to the defendant, based on his unawareness of the immigration consequences of a prior guilty plea and on his contention his counsel was ineffective by failing to investigate and to negotiate a different plea. (*Id.* at pp. 1102–1104.)

In light of the foregoing, the trial court could not have issued a writ of error *coram nobis* because the requirements of such a writ were not met.

## III.

### Neither the Trial Court nor Defendant Has Cited Any Legal Authority Showing the Trial Court Had Discretion to Grant the Motion "as a Matter of Equity and Fairness."

In the motion, defendant did not argue that the trial court had equitable authority to grant the motion. Instead, as discussed *ante*, the motion generally discussed Penal Code section 1016.5 and the writ of error *coram nobis*.

In his respondent's brief, in defense of the trial court's order granting the motion on the stated grounds of "equity and fairness," defendant argues that, notwithstanding the unavailability of express statutory or error *coram nobis* relief, the trial court has "inherent power . . . to grant relief under [Penal Code] section 1018 and allow the withdrawal of a guilty plea based on those clearly established standards."

Penal Code section 1018, however, does not provide authority for the trial court's order granting the motion because that statute only authorizes a trial court to allow a defendant to withdraw a guilty plea before judgment is entered. Section 1018 provides in relevant part: "On application of the defendant at any time *before judgment* . . . , the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and

a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." (Italics added.) In the motion, defendant acknowledged section 1018 is expressly limited to authorizing the trial court to allow the withdrawal of guilty pleas *before* judgment is entered and would not apply after judgment has been entered.

In his respondent's brief, defendant cites *People v. Castaneda* (1995) 37 Cal.App.4th 1612 [44 Cal.Rptr.2d 666] (*Castaneda*) in support of his argument the trial court has inherent authority to vacate guilty pleas. In *Castaneda*, the appellate court stated: "By statute, a defendant who seeks to withdraw his guilty plea may do so before judgment has been entered upon a showing of good cause. [Citation.] Although [Penal Code] section 1018 is limited on its face to the period before judgment, *the courts have long permitted defendants to move to set aside the judgment as a means of allowing the defendant to withdraw the guilty plea after judgment.* [Citations.] [¶] Under Penal Code section 1018, mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of the plea, but good cause must be shown by clear and convincing evidence. [Citations.] The decision to grant the motion to withdraw the plea lies within the discretion of the trial court." (*Id.* at pp. 1616–1617, fn. omitted & italics added.)

Although the *Castaneda* court continued its analysis by discussing how courts have permitted defendants to withdraw guilty pleas after judgment has been entered, based on similar standards utilized in granting prejudgment relief under Penal Code section 1018, the court expressly observed that a motion to vacate (nonstatutory) is "equivalent to a petition for the common law remedy of a writ of error *coram nobis*." (*Castaneda, supra*, 37 Cal.App.4th at p. 1618.)

Defendant has not cited any authority that there is such a thing as a nonstatutory motion to vacate a judgment to withdraw a plea that is distinguishable in its requirements or effect from a petition for a writ of error *coram nobis*.[7] (See *Kim, supra*, 45 Cal.4th at p. 1096 ["a nonstatutory motion to vacate has long been held to be the legal equivalent of a petition for a writ of error *coram nobis* . . ."]; *People v. Carty* (2003) 110 Cal.App.4th 1518, 1526 [2 Cal.Rptr.3d 851] ["Every petition for a writ of error *coram nobis* is a motion to vacate judgment, but the converse is not true. As noted earlier, our Supreme Court has made clear that a petition is the equivalent of a motion to vacate judgment, but appellate cases err by asserting that '[a] motion to

---

[7] In *Kim*, the Supreme Court declined "defendant's invitation to expand the historic boundaries of the writ of error *coram nobis*" and stated, "[i]n light of this conclusion, we express no opinion as to whether the trial court possessed the inherent power to do so." (*Kim, supra*, 45 Cal.4th at p. 1107.)

vacate the judgment is the equivalent of a petition for a writ of error *coram nobis*' [citations], since a *statutory* motion is not a nonstatutory petition." (fn. omitted)].)

 In discussing postjudgment motions to withdraw a guilty plea, the court in *Castaneda, supra*, 37 Cal.App.4th at page 1617, stated, "the courts have required a showing essentially identical to that required under Penal Code section 1018: '[W]here on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits, the court in which he was sentenced may after judgment and after the time for appeal has passed, *if a properly supported motion is seasonably made*, grant him the privilege of withdrawing his plea of guilty . . . . It should be noted, however, . . . that this exceptional remedy applies . . . only upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes.' "

Even if we were to assume the above quoted language from *Castaneda, supra*, 37 Cal.App.4th at page 1617, could be construed to support the existence of a nonstatutory motion to vacate a judgment that is separate from a petition for a writ of error *coram nobis*, defendant failed to make any showing the guilty pleas were made under duress, as a result of fraud, or because of any " 'other fact overreaching [his] free will and judgment.' " The record, for example, does not show defendant was induced to plead guilty to the charged offenses, based on any misrepresentation or false promise. Instead, the record shows that, at most, defendant pleaded guilty to the charged offenses without paying attention to the dates he was alleged to have committed those offenses and without realizing the guilty pleas might be inconsistent with representations he made in support of his citizenship application, thereby jeopardizing his citizenship status. (Compare *Castaneda, supra*, at p. 1620 [postjudgment relief unavailable to the defendant, who sought to withdraw his guilty plea, because he had knowledge of an immigration hold that had been placed against him and he had been advised of the immigration consequences of a guilty plea under Pen. Code, § 1016.5 in an unrelated prior matter] with *People v. Campos* (1935) 3 Cal.2d 15, 16–19 [43 P.2d 274] [postjudgment relief granted to the defendant who filed motion to vacate judgment and petition for writ of error *coram nobis* on the ground the prosecutor had promised the defendant a sentence of life imprisonment in exchange for the plea, but the defendant received a death sentence].)

In light of the absence of authority supporting the trial court's order granting the motion on the basis of "equity and fairness," we conclude the trial court erred.

## DISPOSITION

The postjudgment order is reversed.

Moore, Acting P. J., and Ikola, J., concurred.

A petition for a rehearing was denied September 22, 2011, and respondent's petition for review by the Supreme Court was denied December 14, 2011, S197066.