Filed 9/18/13  P. v. de Lama CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055370 |
| v. | (Super.Ct.No. SWF1100233) |
| JAVIER ANGELO TUEROS DE LAMA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Dismissed.

Zulu Ali, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Javier Angelo Tueros de Lama appeals after he pleaded guilty to one count of possessing prescription drugs for sale in violation of Health and Safety Code section 11375, subdivision (b)(1).  He contends that his trial attorney

rendered constitutionally ineffective representation in failing to specifically advise defendant of the immigration consequences of his guilty plea. He filed a nonstatutory motion below to vacate the plea on that ground. The trial court denied the motion; defendant contends that the denial of the motion was erroneous.

The People argue in contrast that defendant forfeited the issue by failing to bring a timely motion to withdraw his plea, or otherwise to seek review by a proper procedure. We agree with the People that defendant did not pursue an appropriate avenue to review his claim of ineffective assistance of counsel (IAC); although his motion below was the functional equivalent of a petition for writ of error *coram nobis*, this court has recently held that such a procedure is an improper vehicle by which to vacate or withdraw a guilty plea on the ground of IAC. (See *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1145-1146 [Fourth Dist., Div. Two] (*Mbaabu)*.) Even if, in an abundance of caution, the issue is considered on the merits, defendant failed to carry his burden of showing entitlement to relief under the writ.

Because the essential question—whether defendant pursued an appropriate vehicle by which to raise his claim—is answered in the negative, we conclude that the trial court properly determined it had no jurisdiction to proceed. Defendant's appeal must be dismissed.

<u>FACTS AND PROCEDURAL HISTORY</u>

On January 26, 2011, defendant appeared in the trial court for alleged violations of probation in one case, and for arraignment on a new felony complaint in a second case; the new complaint in the second case is the case underlying the instant appeal. The new

2

felony complaint alleged that defendant had committed a violation of Health and Safety Code section 11375, subdivision (b)(1), possessing a controlled substance for sale.

The trial court took defendant's guilty plea on the instant felony complaint. During the taking of the plea, the court expressly reminded defendant that, if he was not a citizen of the United States, the plea could result in deportation, denial of reentry, or denial of naturalization. Defendant had also initialed a provision on his change-of-plea form which provided the same advisement of immigration consequences of the plea.

Defendant admitted as a factual basis that he had possessed a controlled substance for sale, and that he knew the substance was the prescription drug alprazolam. Defendant further admitted that the new guilty plea constituted a violation of his probation in one felony case and a violation of probation in another misdemeanor case. The violation of probation consisted of the new felony conviction; that is, a term in each probation case was that defendant violate no laws. Defendant had apparently also been ordered as a term of probation in his other cases to serve time in custody. Because there was a dispute whether defendant had fully complied with his custody service terms of probation in the other cases, the court set the older probation cases for further proceedings.

The court proceeded immediately to sentencing on the new offense. Defendant waived his right to a probation report on the new offense. The court suspended sentence and granted three years' formal probation. The probation terms required defendant to serve 180 days in custody, to be fulfilled through the sheriff's department work release program. Defendant was given credit for six days (four actual days of custody, plus two days of conduct credits under Pen. Code, § 4019) of presentence service, leaving a

balance of 174 days to be served. The court also imposed a $200 restitution fine, as well as security, conviction, and booking fees.

In July 2011, the sheriff's department filed a report indicating that, although defendant had been ordered to appear at the work release program by February 16, 2011, he had not appeared to serve his custody time. The People therefore filed an allegation that defendant had violated his probation and notified defendant to appear in court on that allegation. Defendant failed to appear for arraignment on the violation of probation allegation. The court revoked probation on August 25, 2011, and issued a bench warrant.

On September 9, 2011, defendant, represented by new counsel, filed a notice of motion and motion "to reopen case and vacate conviction." The motion papers alleged that defendant's former counsel, who had represented him at the time he pleaded guilty, had failed to inquire into defendant's immigration status, and had failed to fully advise him of the immigration consequences of his plea. Former defense counsel failed to provide constitutionally effective assistance of counsel as a result of this alleged failure to advise defendant of the immigration consequences of the guilty plea.

The moving papers asserted that defendant was a legal permanent resident of the United States, having come to this country from Peru in 1994 when he was only two years old. Defendant had received all of his education in the United States, and all of his immediate family lives in the United States. Defendant was recently married, and the couple was expecting their first child.

After defendant's arrest on the current offense, defendant's father asked attorney Robert J. Wade to represent defendant. The moving papers asserted that there was "no

4

communication between the Defendant and Wade," but that "Wade agreed with the Defendant's father to take on representation on this case." Attorney Robin Johnson appeared on Wade's behalf, representing defendant, on the date of defendant's guilty plea. Wade died in July 2011. Defendant's moving papers assert that, "[d]uring these proceedings, at no time did Wade ever consult with the Defendant as to his immigration status. Wade did not ask the Defendant whether he was a [legal permanent resident] or a U.S. citizen." The case proceeded so rapidly that, according to defendant, "his attorney never actually spoke to him about other alternatives to pleading guilty, or what a guilty plea could mean for his immigration status. Moreover, the Defendant could not consult [on] this matter with Wade since he [Wade] did not appear on the date of the plea." Defendant also claimed that he was confused by the proceedings and did not understand the court's questions. Defendant claimed to have no knowledge that a guilty plea to this offense could result in mandatory deportation. Defendant only learned about this consequence "when he was placed on an immigration hold after being arrested for suspicion of drunk driving on August 12, 2011." Defendant argued that he was denied effective assistance of counsel because attorney Wade did not inform defendant of the immigration consequences of the plea.

In his declaration appended to the moving papers, defendant averred that not only did attorney Wade not advise him of the immigration consequences of the plea, but also that attorney Johnson "did not inform me about any immigration consequences. Instead, her statements to me were all about being able to leave [i.e., return home] on that day.

5

Naturally, I wanted to leave detention so I took her advice." Defendant claimed not to know what he was signing when he signed the sentencing memorandum.

Attorney Johnson provided a statement that she had appeared for attorney Wade, representing defendant, on January 26, 2011. She was "one of several attorneys who practice in the [Southwest] court who handled appearances for Mr. Wade when he was too busy to personally appear." Attorney Johnson wrote, "As the offer from the D.A. was reasonable [defendant] chose to accept it and plead guilty to one charge. I read the Felony Plea Form and the Sentencing Memorandum to [defendant], after which I advised him to initial each box that was not 'x'ed out if he understood everything we read, and to sign each form where indicated." Attorney Johnson otherwise had no knowledge as to what attorney Wade may have discussed with defendant concerning the immigration consequences of such a plea.

After a number of continuances, defendant's motion to vacate his plea was heard on October 27, 2011. Attorney Robin Johnson testified at the hearing that she had no present recollection of representing defendant at the plea hearing on January 26, 2011. She had known attorney Wade, but he had died in June 2011. Attorney Johnson was typically in court, serving on a conflict panel, and by agreement had done appearances for Wade. When Wade would ask Johnson to cover a hearing for him, he would typically identify the client's name, the case number, and the criminal charges, but not the client's legal status. In this case, Johnson was appearing for Wade at defendant's arraignment. She would ordinarily receive discovery from the prosecutor and a plea offer. Johnson would then talk to the client and communicate any offer. She would read any discovery

6

provided. "If the offer were such that he would be able to settle it that day, I would go over it with the client. . . . If the client wanted to settle the case, if I thought it was a good deal and I would recommend it, then we would settle the case." She usually asked the client whether the client had discussed what he or she wanted to do with the appointed or retained attorney. "Sometimes the client is insistent on getting out of jail that day, and if the offer will allow that, you know, we discuss that."

Attorney Johnson was asked specifically whether she had discussed defendant's immigration status with him. She testified, "I wouldn't have had any conversation other than when you go over the plea bargain there is a paragraph, a sentence there that discusses that if they are not here legally they can be deported and they can't re-enter the United States, and then if they have - - I always ask at the end if they have any questions about that." Attorney Johnson testified that, "For each line [of the sentencing memorandum], I read it to them, and I'm constantly asking them if they understand, and then at the end I say if you understand all of these, you need to put your initial in each of the little boxes that don't have an 'X' because those all apply to you. I constantly ask if they have any questions." Johnson did not recall whether she knew that defendant was not a United States citizen. She did not recall whether there was any further discussion with defendant about the immigration consequences of his plea.

Attorney Johnson testified that she does not normally undertake an investigative process to determine the immigration status of a client. The immigration consequences advisement is printed directly on the plea form, which she goes over with the client. If a client expresses any concern or has any question about the immigration advisement, she

7

will advise the client to speak to an immigration attorney. She would then not permit the plea process to go forward, but would continue the matter to allow the client to consult with an immigration expert. Attorney Johnson had no specific memory of any conversation she may have had with defendant in this case, but testified solely to her custom and practice.

Defendant testified in his own behalf that he never had any communication with attorney Wade before the arraignment and plea hearing. Wade did not appear on that day to represent defendant, but attorney Johnson approached defendant and told defendant that she would be handling the matter for Wade. Defendant testified that he told Johnson he wanted to plead not guilty, "but she told me that if I plead not guilty I will go to trial and they will find me guilty anyway." Johnson told defendant that the plea offer was a work release program and three years of formal probation. Defendant did not ask any questions about the plea offer. Defendant "just knew it was [a] work release program. It was something like community service, so I knew I was being released that day, so I pled guilty that day." Johnson did advise defendant that he should take the offer, because he would be released that day. Johnson never asked defendant if he was a U.S. citizen, or whether he was a lawful permanent resident, or any questions about his immigration status. Johnson did ask defendant if he needed a Spanish interpreter, but he told her that he speaks English very well.

Defendant was "reading through" the plea form, which included the advisement about immigration consequences of the plea; however, defendant "wasn't worried about what was going on there. I was worried about just taking the work release program.

8

That's all I knew that I was knowing in my mind that I was getting out with work release program and three years of formal probation, so I just initialed it all without knowing what I was reading."

Defendant testified that he did not remember Johnson reading the portion of the plea form concerning immigration consequences. Defendant also testified that he did not remember reading that provision himself. Attorney Wade had never advised defendant about any immigration consequences of the conviction. If defendant had known that he could be deported as a result of the guilty plea, he would not have pled guilty.

Defendant also indicated that attorney Wade had been hired to represent him on another case a year earlier. Defendant never discussed his immigration status with Wade during the representation in the earlier case.

On cross-examination, defendant acknowledged that he could read and understand English. Defendant admitted that he had initialed the plea form before he pleaded guilty, and that he had signed the form. He stated, however, that he did not read the form. If defendant had read the advisement on the form, he would not have pleaded guilty. Defendant also admitted initialing and signing a similar plea form in May of 2010. In that case, defendant had been represented by attorney Wade. Defendant signed the earlier plea form, including the representation that defendant had understood the advisements contained in the plea. Attorney Wade had also signed the form. Defendant claimed that Wade "did not really explain it at all in a rightful manner to me." Defendant admitted that he had read the form, and that he could read and understand English. Defendant agreed that he had initialed the advisement that, "if I am not a citizen of the

9

United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization," and said, "I read it, but I didn't understand exactly what it meant to me." Defendant was not sure whether there were any other provisions of the form that he had not understood.

Defendant did not remember answering the judge's questions at his plea hearing in January 2011. He did not remember the court's advisement that the guilty plea could subject defendant to deportation, exclusion, or denial of naturalization. He did not remember telling the judge, "yes," that he understood the advisement. Defendant also did not remember being advised by the court of immigration consequences when defendant pleaded guilty in May 2010.

The trial court heard argument from counsel and then ruled, denying defendant's nonstatutory motion to withdraw his plea. As to the procedural posture, the court questioned whether it was "appropriate for the Court to consider this motion to set aside the plea based on I.A.C. more than six months after your client entered into the guilty plea." The court "d[id] not find that the motion lies in this matter, and I deny the motion of the defendant under [Penal Code section] 1016.5 as well as I.A.C." The motion was "clearly untimely based on any statutory exception," but the court "assum[ed] that there may be a nonstatutory basis" on which to bring such a motion. However, on the merits, the trial court found that defendant had read and initialed the plea form, including the express advisement of immigration consequences of his plea. He signed, indicating that he had read and understood his rights, and the rights he was giving up in making the plea. Attorney Johnson had signed the plea form also, averring that she was personally

10

satisfied that defendant understood his rights, that defendant had had a full opportunity to discuss the case with her, and that he was aware of the consequences of his plea. The court found no IAC; the court found "no obligation of the attorney to do anything more than to advise. It is clear that the attorney did advise. It is clear that her client understood, and I don't find that it was ineffective of Mr. Wade to ask another attorney to appear for him that day in Southwest."

Defendant filed a notice of appeal on December 23, 2011. The notice of appeal challenged the validity of the plea, on the ground that defendant's due process rights were violated, based on the claim of IAC in failing to specifically advise defendant of the immigration consequences of his plea.

## ANALYSIS

### I. Contentions

Defendant frames the issue in terms of the right to effective assistance of counsel; he claims that both attorneys, Wade and Johnson, were ineffective for failing to advise defendant of the immigration consequences of the plea, or any alternative to the offered plea that might have avoided or ameliorated the immigration consequences of the plea.

The People argue, however, that a preliminary matter must be considered, i.e., whether the motion defendant brought in the trial court was proper. The People contend that defendant's nonstatutory motion to vacate the judgment and plea was not a proper vehicle by which to raise the claim of IAC in allegedly failing to advise defendant of the immigration consequences of his plea. The People assert that defendant forfeited any right to bring an IAC claim by any of the proper means.

11

Penal Code section 1016.5, subdivision (b), provides for a statutory motion to vacate the judgment if the *trial court* fails, while taking a plea, to give the required admonition to the defendant of the immigration consequences of that plea. The statutory motion to vacate provided in Penal Code section 1016.5, subdivision (b), is inapplicable to any failure by counsel to advise a defendant of immigration consequences of a plea, and thus is not the proper vehicle by which to raise an IAC claim consisting of the failure to advise of immigration consequences. (*People v. Chien* (2008) 159 Cal.App.4th 1283, 1288 (*Chien*).)

Likewise, Penal Code section 1018 provides for a statutory motion to vacate a guilty plea for good cause. Such a motion must be brought either before judgment has been entered, or within six months after probation is granted if entry of judgment has been stayed. (Pen. Code, § 1018.) Defendant's motion below was made more than six months after entry of judgment was suspended and probation granted.

Defendant might have pursued a petition for writ of habeas corpus to test his IAC claim, but he did not do so. (See *In re Resendiz* (2001) 25 Cal.4th 230, 237, fn. 2 (*Resendiz*).)

Rather, defendant styled his motion below as a nonstatutory motion to vacate the judgment, but such a motion is the legal equivalent of a petition for writ of error *coram nobis*. (*People v. Kim* (2009) 45 Cal.4th 1078, 1096 (*Kim*).) The People argue that defendant's motion failed to meet the requirements for a *coram nobis* petition, and that *coram nobis* is not an appropriate vehicle for review of an IAC claim.

Inasmuch as none of the theories upon which defendant could have brought his IAC claim was viable, the People argue, the trial court had no jurisdiction to hear the motion.

## II.  Standard of Review

Defendant maintains that the standard of review for his IAC claim is de novo; whether an attorney has rendered constitutionally IAC is a mixed question of law and fact, which the appellate court reviews independently to determine whether the standards for such a claim have been met.  (Citing *United States v. Faubion* (5th Cir. 1994) 19 F.3d 226, 228.)

The People's contentions, to the effect defendant did not preserve the claim for appeal because he did not pursue relief by the proper mechanism in the trial court, present issues of jurisdiction and statutory interpretation, which also are reviewable under the de novo standard.  (See *People v. Akhile* (2008) 167 Cal.App.4th 558, 562-563.)

However, the procedure that defendant elected to pursue—a nonstatutory motion to vacate the plea—was the functional equivalent of a petition for writ of error *coram nobis*.  (*People v. Gari* (2011) 199 Cal.App.4th 510, 522 (*Gari*); accord *Mbaabu, supra*, 213 Cal.App.4th 1139, 1146.)  "A lower court's ruling on a petition for the writ is reviewed under the abuse of discretion standard."  (*Ibid*.)

## III.  Defendant Failed to Pursue an Appropriate Vehicle to Review His IAC Claim

As noted above, in the description of the People's contentions on appeal, defendant might have proceeded on his IAC claim in any number of ways, but he failed to select and pursue a timely and appropriate remedy.

13

Defendant's motion, premised on the failure to advise him of the immigration consequences of a guilty plea, could not validly be brought under Penal Code section 1016.5. Penal Code section 1016.5, subdivision (b), expressly provides for a statutory motion to withdraw a plea based on the failure *of the trial court* to give the advisement set forth in the statute. The statute does not provide for a motion to vacate based on the failure of a defendant's counsel to advise him or her of the immigration consequences of the plea. (*Chien*, *supra*, 159 Cal.App.4th 1283, 1288.)

Defendant might also have proceeded with a statutory motion to vacate the plea, pursuant to Penal Code section 1018. That section provides for a motion to withdraw the plea before judgment, or within six months if the entry of judgment is suspended and probation is granted. Here, the court ordered the proceedings suspended when it accepted defendant's plea, and admitted him to probation. However, defendant's motion below was filed on September 9, 2011, more than six months after defendant's plea on January 26, 2011. (*People v. Williams* (2011) 199 Cal.App.4th 1285, 1288 (*Williams*).)

In *Williams*, the court noted that Penal Code section 1018 "was amended in 1991 to add the language ' "or within six months after an order granting probation is made if entry of judgment is suspended." ' [Citation.] Prior to the amendment, a defendant could withdraw a plea at any time prior to judgment. [Citation.] [¶] The purpose of the 1991 amendment was to limit the time period in which a defendant who receives probation and a suspended judgment may withdraw the guilty plea." (*Williams*, *supra*, 199 Cal.App.4th 1285, 1289.) Here, of course, defendant brought his motion well outside the time limit

14

imposed by Penal Code section 1018. To the extent his motion might or could have been based on Penal Code section 1018, it was untimely.

The initial motion papers entitled the matter a "motion to reopen case and vacate conviction." In the body of the papers, defendant argued that "California courts must entertain non-statutory [*sic*] motions to invalidate particular stages of a criminal case, even entire criminal convictions, on constitutional grounds." Defendant also asserted that his motion was based on such constitutional grounds, i.e., that he had been deprived of his constitutional Sixth Amendment right to effective assistance of counsel, consisting of counsel's alleged "fail[ure] to advise [defendant] of the immigration consequences" of his guilty plea.

Defendant relied on *Murgia v. Municipal Court* (1975) 15 Cal.3d 286 (*Murgia*), *Jones v. Superior Court* (1970) 3 Cal.3d 734, 738-739, and *People v. Coffey* (1967) 67 Cal.2d 204, 215, as declaring a "rule" that "constitutional violations must find a remedy even if no statute provides one," and urged that such a rule had been applied to claims of IAC (citing *People v. Fosselman* (1983) 33 Cal.3d 572). However, the cited cases do not confer "inherent jurisdiction" on trial courts to consider untimely, nonstatutory motions to review IAC claims.

*Murgia*, *supra*, 15 Cal.3d 286, is not apposite. In that case, defendants in a criminal case sought discovery of information relevant to their claim that certain criminal statutes were being enforced in an invidiously discriminatory manner against them because of their union activities. The defendants filed pretrial motions to dismiss the charges, on the ground of discriminatory prosecution. The California Supreme Court

15

stated that the issue of discriminatory prosecution was not, strictly speaking, a "defense" to the criminal charges, because it " 'relates not to the guilt or innocence of [the accused], but rather addresses itself to a constitutional defect in the institution of the prosecution.' [Citation.]  As such, the claim 'should not . . . be tried before the jury . . . but should be treated as an application to the court for a dismissal or quashing of the prosecution upon constitutional grounds.' [Citation.]" (*Id*. at p. 293, fn. 4.)  The court also declared that, "because a claim of discriminatory prosecution generally rests upon evidence completely extraneous to the specific facts of the charged offense, we believe the issue should not be resolved upon evidence submitted at trial, but instead should be raised, as defendants have done here, through a pretrial motion to dismiss.  Although no clear California statutory authority provides for such a pretrial motion to dismiss, we have no doubt in light of the constitutional nature of the issue as to the trial court's authority to entertain such a claim." (*Id*. at pp. 293-294, fn. 4.)

*Murgia* does not stand for a "rule" that a court always has "inherent jurisdiction" to entertain nonstatutory motions at any and all times, merely because they are framed as affecting constitutional rights, and it provides no justification for defendant's nonstatutory motion to review his IAC claim in this case.  The instant case is distinguishable because, in contrast to *Murgia*, avenues—statutory and otherwise—already existed by which defendant might have raised his IAC claim.

As already noted, defendant could have brought a motion under Penal Code section 1018, if he had acted timely.  He filed his motion outside the six-month statutory period.

16

Defendant might have raised an IAC claim on appeal, but he did not appeal. Where the record does not show the reason for counsel's acts or omissions, a claim of IAC may not be raised on appeal; instead, it is "more properly raised in a petition for habeas corpus, which can include declarations and other information outside the appellate record that reveal the reasons for the challenged conduct. [Citation.]" (*People v. Witcraft* (2011) 201 Cal.App.4th 659, 664-665.) Defendant's motion below did not purport to be a petition for writ of habeas corpus.

Regardless of whether an appeal or a habeas corpus petition would have been more appropriate, the record here, which was developed in the motion hearing, did show the reasons for counsel's acts or omissions.

First, attorney Wade did not specifically advise defendant of the immigration consequences of the plea in this case, but there was a good reason for that. Attorney Wade was not present and did not represent defendant at the plea hearing. Also, attorney Wade had represented defendant in the past, on another guilty plea a few months earlier. In the earlier plea, attorney Wade had certified that he had advised defendant of his rights and the consequences of the plea, and was personally satisfied that defendant understood them. The enumerated rights and consequences on the plea form included the standard advisement of immigration consequences.

Second, attorney Johnson was the lawyer who represented defendant in the plea hearing in the instant case. She testified that she read the immigration consequences admonition to defendant, and she had "constantly" asked defendant if he understood the plea form and if he had any questions. She, like Wade, had certified on the plea form that

17

she had advised defendant of his rights and the consequences of his plea; manifestly, the express consequences recited on the form included the consequence that a guilty plea could result in deportation, exclusion from admission to the United States, and denial of citizenship. Defendant admitted both that attorney Johnson had read the form to him, and that he had read it himself, but testified that he did not pay much attention because he was focused on being released from custody.

Defendant may have shown that attorney Wade did not advise him, on the instant charge and plea, of immigration consequences, but the record also clearly provides a good reason why he did not do so—he was not present, and did not provide representation to defendant in this case. Defendant failed to show that attorney Johnson did not advise him of the immigration consequences of his plea. To the contrary, the evidence indicates that she did so advise him. As a result, any appeal or any petition for writ of habeas corpus on the IAC claim would have been futile. In any case, defendant failed to pursue either of these avenues of relief.

The procedure defendant did select—a nonstatutory motion to vacate the judgment or plea—is the legal equivalent of a petition for writ of error *coram nobis*. (*Gari*, *supra*, 199 Cal.App.4th 510, 522; accord *Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1146.)

As we stated in *Mbaabu*, "To be entitled to relief on a postjudgment motion to vacate the judgment, the courts have required a showing essentially identical to that required under [Penal Code] section 1018, that is, on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits. [Citation.] Where application for relief is made after judgment and

18

after the time for appeal has passed, relief is available if a properly supported motion is seasonally made, but this exceptional remedy applies ' " 'only upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes.' " ' [Citation.]" (*Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1146.)

We further elaborated on the limits of the *coram nobis* remedy, as well as the required showing. "The grounds on which a litigant may obtain relief via a writ of error *coram nobis* are narrower than on habeas corpus. (*People v. Kim*, *supra*, 45 Cal.4th at p. 1091, citing *In re Lindley* (1947) 29 Cal.2d 709, 724–725 [177 P.2d 918].) The writ's purpose is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court. [Citations.] [¶] The writ of error *coram nobis* is granted only when three requirements are met. Those requirements are set forth in the decision of *People v. Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal. Rptr. 1, 397 P.2d 993]: (1) The petitioner must show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment. (2) The petitioner must also show that the newly discovered evidence does not go to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial. This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. (3) The petitioner must show that the facts upon which he relies were not known to him

19

and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his petition for the writ. These factors, set forth in *Shipman*, continue to outline the modern limits of the writ. [Citation.]" (*Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1146-1147.)

The *coram nobis* writ reaches only factual errors. "Because the writ of error *coram nobis* applies where a fact unknown to the parties and the court existed at the time of judgment that, if known, would have prevented rendition of the judgment, the remedy does not lie to enable the court to correct errors of law. [Citation.] This includes constitutional claims, such as a claim that counsel was ineffective in failing to admonish a defendant of the immigration consequences of his conviction. [Citation.]" (*Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1147.)

Here, of course, the "fact" that defendant alleged was not known to him was his alleged factual ignorance of the immigration consequences that could result from his guilty plea. This "was not a new 'fact' that was undiscoverable despite the exercise of due diligence . . . ." (*Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1147.) The matter was completely within defendant's power to have known and understood with the exercise of due diligence; defendant chose instead, however, not to exercise due diligence. The trial court read the statutorily required immigration consequences admonition to defendant in open court; defendant responded orally that he understood. Likewise, defendant admitted that he read the provisions of the plea agreement that he had initialed, including the immigration consequences warning.

The trial court, as the trier of fact, was entitled to disbelieve defendant's self-serving claim that he did not know, e.g., what "deportation" meant. Defendant had, after all, been a resident of the United States since the age of two, and he had received all of his education in the United States. He had finished his secondary education with a high school diploma. His moving papers included a declaration averring that English was his primary language. Defendant could read and understand English. The trial court found defendant's testimony—i.e., that he did not understand the immigration consequences advisement—was not credible; the credibility issue was a matter for the trial court. (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 175-176; *People v. Jones* (1968) 268 Cal.App.2d 161, 165.)

Defendant further admitted that attorney Johnson had read the plea form to him, but he was not worried or concerned about it, because he was anxious to be released from custody. By defendant's own admission, he failed to exercise due diligence to pay attention to the information—immigration consequences of the plea—that was directly in front of him. Defendant also was no stranger to plea proceedings and advisements, having pleaded guilty and been advised by the court and counsel in at least two prior cases about the immigration consequences of any such plea.

"[B]inding precedent holds that constitutional violations, such as violations of a defendant's right to effective assistance of counsel, are not properly presented in a petition for writ of error *coram nobis*. [Citation.]" (*Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1148.) Defendant's motion below, which was in the nature of a writ of error *coram nobis*, was an improper vehicle by which to raise his IAC claim. Because defendant did

21

not pursue any other viable avenue of review, he has effectively forfeited the right to raise the matter on appeal.

### IV.  Defendant Failed to Substantiate the Merits of His IAC Claim

The most appropriate vehicle by which defendant could have raised a claim of IAC was via a petition for writ of habeas corpus.  In *Mbaabu*, we considered the merits of the defendant's IAC claim on the theory that the trial court might have treated the nonstatutory motion to vacate as a petition for writ of habeas corpus.  Even if, in an abundance of caution, we do the same here, we conclude that defendant's IAC claim fails.

In order to prevail on a claim of IAC, the defendant must show both that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 [104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674] (*Strickland*); see also *In re Roberts* (2003) 29 Cal.4th 726, 744-745; *Resendiz*, *supra*, 25 Cal.4th 230, 239.)  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)  If a claim of IAC can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient.  (*Strickland*, *supra*, 466 U.S. 668, 697 [104 S.Ct. 2052]; *In re Cox* (2003) 30 Cal.4th 974, 1019-1020.)

22

As discussed briefly in the previous section, defendant failed to demonstrate either incompetence or prejudice. Attorney Wade did not act incompetently in having another attorney appear to represent defendant at the arraignment and change-of-plea hearing. Inasmuch as attorney Wade did not represent defendant during the plea proceedings, Wade's asserted failure to advise defendant of the immigration consequences of his plea was reasonable. Attorney Johnson did not act incompetently in representing defendant at the plea hearing. She testified to her usual custom and practice, which was to read the plea form to a defendant, and to ask "constantly" whether the client understood, and whether the client had any questions. Defendant admitted that attorney Johnson read the form to him, although he claimed he did not remember the immigration advisement. Defendant also claimed not to remember or understand the same advisement by the court, but the record establishes without conflict that defendant openly stated that he understood the immigration admonition. Defendant also testified that he read the form himself, as to all the provisions that he personally initialed. Defendant failed to show that he was not advised of the immigration consequences of his plea; rather, he showed only that he failed to pay attention to the advisement, or did not cognitively apprehend that it meant what it said, i.e., that he could be deported, or excluded from admission to the United States, or precluded from citizenship.

Defendant argues that the advisement he admittedly received, couched in the statutory language, was inadequate. He contends that his attorney was obliged to do more than advise him of the general consequences of the plea, in reliance on cases such as *Padilla v. Kentucky* (2010) 559 U.S. 356 [176 L.Ed.2d 284, 130 S.Ct. 1473] (*Padilla*);

23

*Resendiz, supra*, 25 Cal.4th 230; *People v. Barocio* (1989) 216 Cal.App.3d 99 (*Barocio*); and *People v. Soriano* (1987) 194 Cal.App.3d 1470 (*Soriano*).

None of these cases is apposite. In each of the cases, the defense attorney had given affirmatively incorrect immigration advice to the defendant. (*Padilla*, *supra*, 559 U.S. 356 [176 L.Ed.2d 284, 130 S.Ct. 1473, 1478] [Attorney told noncitizen defendant that he "did not have to worry" about immigration consequences because he had been in the U.S. for a long time.]; *Resendiz*, *supra*, 25 Cal.4th 230, 236, 251 [Attorney told noncitizen defendant he would have "no problems" with immigration, other than not being able to get citizenship.]; *Barocio*, *supra*, 216 Cal.App.3d 99, 102 [Attorney failed to advise the defendant of his right to ask for a "recommendation against deportation" (RAD) from the sentencing court.]; *Soriano*, *supra*, 194 Cal.App.3d 1470, 1479, 1480-1481 [Attorney was not aware that a sentence of 364 days, one day less than one year, rather than a one-year sentence, would have excluded the defendant from the class of people who are automatically deported; there was no evidence the attorney was aware that she could have applied for a RAD from the trial court to avoid the defendant's deportation; the defendant also testified that the attorney affirmatively told him he "would not be deported."].) There is no suggestion here that either attorney gave defendant any incorrect advice.

In addition, immigration law has changed considerably in the interval since *Soriano* and *Barocio*. Then, immigration law authorized a RAD to avoid immigration consequences of a plea. The RAD provisions were repealed in 1990. (8 U.S.C.A. § 1251(b); Pub. L. No. 101-649 (Nov. 29, 1990) 101 Stat. 5050, § 505b; see also *People*

*v. Leung* (1992) 5 Cal.App.4th 482, 508-509.) Thus, it is no longer possible to apply for a RAD as an alternate disposition to avoid immigration consequences. Defendant here has failed to indicate what more favorable immigration outcome his attorneys should have advised him to seek, which were realistically available.

Defendant relies on *Soriano* for the proposition that his attorney was obliged to do more than tell him the immigration consequences of the plea in general terms. (See *Soriano*, *supra*, 194 Cal.App.3d 1470, 1480-1482 [A "formulaic warning" or a "pro forma caution" from the attorney was not "founded on adequate investigation of federal immigration law," and was inadequate advice concerning the immigration consequences of the plea.].) On the other hand, the California Supreme Court in *Resendiz* stated that the failure of the trial attorney to investigate the likely immigration consequences did not constitute deficient performance: "We are not persuaded that the Sixth Amendment imposes a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law." (*Resendiz*, *supra*, 25 Cal.4th 230, 249-250.) We are likewise unpersuaded that an attorney has a duty to do more than advise the pleading defendant of the immigration consequences of the plea; no particular form of warning is required, as long as the defendant is informed that serious immigration consequences could result from the conviction. (Cf. *People v. Castro-Vasquez* (2007) 148 Cal.App.4th 1240, 1244 [Statutory admonition by the court under Pen. Code, § 1016.5 "need not be in the statutory language, and substantial compliance is

25

all that is required, 'as long as the defendant is specifically advised of all three separate immigration consequences of his plea.' "].)

Just as defendant is unable to establish that his attorneys acted incompetently, he is also unable to show prejudice. Despite defendant's averment in his declaration, and his hearing testimony, that he would not have pleaded guilty had he known that he could be deported, that claim is not sufficient in itself to establish prejudice. "[A] defendant's self-serving statement . . . [regarding whether] with competent advice he or she *would* [or would not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.) The factors to consider are, "whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*Ibid*.)

Defendant has not claimed that trial counsel inaccurately conveyed the plea offer to him. He was offered an advantageous bargain, resulting in probation and immediate release. Although defendant asserts he would have insisted on going to trial had he known he could be deported, at trial his exposure was three years imprisonment had he

been convicted, and the conviction still would have rendered him deportable.

Defendant's claim is also belied by his past experience with the criminal justice system. Before the current charges were brought, defendant had already been convicted of at least one similar felony offense of possessing drugs for sale. Defendant had been represented in that proceeding by attorney Wade. Defendant had willingly pleaded guilty and received probation in that case, which contained identical immigration advisements to those in this case.

Defendant could not establish either prong of his IAC claim; the claim fails.

### DISPOSITION

The procedure defendant elected to pursue, a nonstatutory motion to vacate the plea (equivalent of a petition for writ of error *coram nobis*), is not an appropriate mechanism by which to raise a claim of IAC. Defendant failed to appeal, failed to pursue a timely statutory motion, and failed to file a petition for writ of habeas corpus. The Sixth Amendment "does not require states to provide an avenue for noncitizens to challenge their convictions based on an erroneous immigration advisement when no other remedy is presently available." (*People v. Shokur* (2012) 205 Cal.App.4th 1398, 1405.) Defendant forfeited the right to have his claim reviewed on appeal, because he failed to pursue an appropriate procedure below.

Even if, in an abundance of caution, his claim could have been treated as a petition for writ of habeas corpus and examined on the merits (see *Mbaabu*, *supra*, 213 Cal.App.4th 1139, 1148), the claim still fails. Defendant was unable to show either that

27

counsel's actions fell below an objective standard of reasonableness under prevailing professional norms, or that he was prejudiced by counsel's alleged errors or omissions.

However, because the crux of the matter before us is that defendant failed to pursue any appropriate avenue of remedy, he has forfeited the right to raise the IAC claim on appeal.  The appeal is therefore dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MCKINSTER            
J.

We concur:


HOLLENHORST          
Acting P. J.


MILLER              
J.

28