[No. S151561. Mar. 16, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
AVELINO CEJA VILLA, Defendant and Appellant.

COUNSEL

Rodney Richard Jones, under appointment by the Supreme Court, for Defendant and Appellant.

Reed Smith, Paul D. Fogel; and Linda Starr for Northern California Innocence Project as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Stan Helfman, Laurence K. Sullivan, Christopher J. Wei and Jeffrey M. Laurence, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WERDEGAR, J.**—Avelino Ceja Villa, a lawful resident alien, pleaded guilty to a felony in this state in 1989 and served a three-year period of probation. Now, many years later, he is facing removal from this country by federal immigration authorities, allegedly because of his 1989 conviction. In a companion case, we address whether, and to what extent, persons in similar situations are entitled to have their guilty pleas vacated by a writ of error *coram nobis*. (*People v. Kim* (2009) 45 Cal.4th 1078 [90 Cal.Rptr.3d 355, 202 P.3d 436].) In this case, we hold that because Villa is no longer in California custody as a result of his 1989 conviction, but is instead in federal custody in another state, he is ineligible for relief by way of a writ of habeas corpus. In suggesting otherwise, the Court of Appeal erred.

### FACTS

Villa resides in this country but is not a United States citizen; he is a citizen of Mexico. He applied for lawful permanent resident status in 1987, under a federal amnesty program. In 1989, while his residency application was pending, he pleaded guilty in Alameda County Superior Court to violating Health and Safety Code section 11351, possession of cocaine for sale. As a result, the court placed him on probation for three years. At that time, he was told the Immigration and Naturalization Service (INS)[1] had not placed a deportation hold on him, although the prosecutor noted that there

---

[1] Like the Court of Appeal below and the parties, we will continue to refer to the federal authorities as the "INS," although that agency has since been reorganized into the Department of Homeland Security. Deportations are now prosecuted by United States Immigration and Customs Enforcement. (See *U.S. v. Garcia-Beltran* (9th Cir. 2006) 443 F.3d 1126, 1129, fn. 2 ["The INS is now known as Immigration and Customs Enforcement (ICE)."].)

"[s]hould be" one. The INS was apparently untroubled by his felony conviction, however, for in 1990 it granted him lawful permanent resident status.

In 2005, Villa applied to the INS to renew his permanent resident status. The INS instead arrested him and served him with a notice to appear for removal proceedings. The only basis for his detention and pending deportation was his 1989 conviction. Villa alleges he is currently in the custody of the INS in a contract detention facility in Alabama.[2]

After being placed in federal detention, Villa filed a petition for a writ of error *coram nobis* in the Alameda County Superior Court,[3] making three allegations: (1) That when he entered his plea the trial court failed to advise him under Penal Code section 1016.5 of the possibility he could be deported as a result of his conviction; (2) his trial counsel was constitutionally ineffective for misadvising him he would not be deported as a result of his guilty plea; and (3) his rights under the Vienna Convention on Consular Relations and Optional Protocol on Disputes of April 24, 1963 (21 U.S.T. 77, T.I.A.S. No. 6820) (the Vienna Convention) were violated because he was not told of his right to contact the Mexican Consulate. The trial court denied the petition, first finding the court that had taken his plea in 1989 had in fact advised him of its immigration consequences. (The record of the plea proceeding confirms this conclusion.) The trial court also ruled Villa had failed to allege facts demonstrating ineffective assistance of counsel and that the proof of his crime was "extremely strong," presumably rendering any treaty violation harmless. Villa appealed, raising the issues of the alleged ineffectiveness of counsel and the treaty violation.

The Court of Appeal rejected both claims, finding that the alleged treaty violation should have been raised on direct appeal, citing *Breard v. Greene* (1998) 523 U.S. 371, 375–376 [140 L.Ed.2d 529, 118 S.Ct. 1352]. The appellate court further held that Villa's ineffectiveness of counsel claim was not cognizable on *coram nobis*. It then considered whether it could grant relief by considering Villa's *coram nobis* petition as a petition for a writ of habeas corpus. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 511 [46 Cal.Rptr.3d 408] ["The label given a petition, action or other pleading is not determinative; rather, the true nature

---

[2] Villa requests we take judicial notice of two articles from local newspapers describing the federal immigration detention facility in Etowah, Alabama. As these articles are unnecessary to the resolution of this case, the request is denied. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

[3] As his conviction was attained by a plea with no appeal, the trial court was the proper court in which to seek *coram nobis* relief. (Pen. Code, § 1265.)

of a petition or cause of action is based on the facts alleged and remedy sought in that pleading."].) In a split decision, the appellate court concluded that although Villa was in federal custody in Alabama and not in California state custody, he could challenge the legality of that custody by filing a habeas corpus petition in California. But the appellate court ultimately denied relief because Villa did not allege his federal custody was due solely to his California conviction. The concurring justice agreed that relief on both *coram nobis* and habeas corpus should be denied, but disagreed that Villa's federal custody entitled him to challenge his long-final state conviction in a state habeas corpus petition.

Villa did not seek review in this court. Although the People prevailed in the appellate court, they petitioned for review, contending the Court of Appeal incorrectly held that a writ of habeas corpus was an available remedy for a litigant, like Villa, who has already served his state sentence and who is presently detained by a governmental entity other than the State of California.

Because the Court of Appeal's decision conflicted with *In re Azurin* (2001) 87 Cal.App.4th 20 [104 Cal.Rptr.2d 284], we granted review.

### DISCUSSION

The writ of habeas corpus enjoys an extremely important place in the history of this state and this nation. Often termed the "Great Writ," it "has been justifiably lauded as ' "the safe-guard and the palladium of our liberties" ' " (*In re Sanders* (1999) 21 Cal.4th 697, 704 [87 Cal.Rptr.2d 899, 981 P.2d 1038]) and was considered by the founders of this country as the "highest safeguard of liberty" (*Smith v. Bennett* (1961) 365 U.S. 708, 712 [6 L.Ed.2d 39, 81 S.Ct. 895]). As befits its elevated position in the universe of American law, the availability of the writ of habeas corpus to inquire into an allegedly improper detention is granted express protection in both the United States and California Constitutions. (U.S. Const., art. I, § 9, cl. 2; Cal. Const., art. I, § 11.) In this state, availability of the writ of habeas corpus is implemented by Penal Code section 1473, subdivision (a), which provides: "Every person unlawfully *imprisoned* or *restrained* of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." (Italics added.)

■ As the italicized text in Penal Code section 1473, subdivision (a) demonstrates, a necessary prerequisite for issuance of the writ is the custody or restraint of the petitioner by the government. "Thus, it is well settled that the writ of *habeas corpus* does not afford an all-inclusive remedy available at

all times as a matter of right. It is generally regarded as a special proceeding. 'Where one restrained pursuant to legal proceedings seeks release upon *habeas corpus*, the function of the writ is merely to determine the legality of the detention by an inquiry into the question of jurisdiction and the validity of the process upon its face, and whether anything has transpired since the process was issued to render it invalid.' " (*In re Fortenbury* (1940) 38 Cal.App.2d 284, 289 [101 P.2d 105].)

■ The key prerequisite to gaining relief on habeas corpus is a petitioner's custody. Thus, an individual in custody for a crime (or alleged crime) may—within limits—challenge the legality of that detention on habeas corpus. A petitioner in custody can also challenge the conditions of confinement, a challenge related not to the petitioner's underlying conviction but instead to his or her actual confinement. (*In re Allison* (1967) 66 Cal.2d 282, 285 [57 Cal.Rptr. 593, 425 P.2d 193] ["The writ of habeas corpus may be sought by one lawfully in custody for the purpose of vindicating rights to which he is entitled even in confinement."].)

■ In previous eras, the custody requirement was interpreted strictly to mean actual physical detention. (*Matter of Ford* (1911) 160 Cal. 334, 339–342 [116 P. 757] [habeas corpus unavailable for one released on bail]; *In re Gow* (1903) 139 Cal. 242, 243 [73 P. 145] [same, for one released on own recognizance; improper to voluntarily submit to custody in order to file a writ petition]; see *Parker v. Ellis* (1960) 362 U.S. 574 [4 L.Ed.2d 963, 80 S.Ct. 909] (per curiam) [habeas corpus petitioner's release from prison before his case could be heard by the Supreme Court rendered his case moot and the court lacked jurisdiction to proceed].) This view has since been somewhat relaxed. Thus, "the decisional law of recent years has expanded the writ's application to persons who are determined to be in constructive custody. Today, the writ is available to one on parole (*In re Jones* (1962) 57 Cal.2d 860 [22 Cal.Rptr. 478, 372 P.2d 310]), probation (*In re Osslo* (1958) 51 Cal.2d 371 [334 P.2d 1]), bail (*In re Petersen* (1958) 51 Cal.2d 177 [331 P.2d 24]), or a sentenced prisoner released on his own recognizance pending hearing on the merits of his petition (*In re Smiley* (1967) 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179])." (*In re Wessley W.* (1981) 125 Cal.App.3d 240, 246 [181 Cal.Rptr. 401].) A sentence of a fine *or* imprisonment (in the alternative) similarly suffices to meet the custody requirement for habeas corpus relief. (*In re Catalano* (1981) 29 Cal.3d 1, 7–9 [171 Cal.Rptr. 667, 623 P.2d 228].)

Habeas corpus practice in the federal courts has generally followed this trend. (See, e.g., *Jones v. Cunningham* (1963) 371 U.S. 236 [9 L.Ed.2d 285, 83 S.Ct. 373] [defendant released on parole is still "in custody" for federal

habeas corpus purposes]; *Hensley v. Municipal Court* (1973) 411 U.S. 345 [36 L.Ed.2d 294, 93 S.Ct. 1571] [same, regarding defendant released on his own recognizance]; *Carafas v. LaVallee* (1968) 391 U.S. 234, 238–241 [20 L.Ed.2d 554, 88 S.Ct. 1556] [custody requirement satisfied although the petitioner was unconditionally released before completion of proceedings on his habeas corpus petition].)

■ Under all of these scenarios, the habeas corpus petitioner is deemed to be in constructive custody because he or she "is subject to 'restraints not shared by the public generally' " (*In re Smiley, supra,* 66 Cal.2d at p. 613, quoting *Jones v. Cunningham, supra,* 371 U.S. at p. 240) and "may later lose his liberty and be eventually incarcerated" (*In re Wessley W., supra,* 125 Cal.App.3d at p. 246).

By contrast, collateral consequences of a criminal conviction—even those that can later form the basis of a new criminal conviction—do not of themselves constitute constructive custody. For example, in *In re Stier* (2007) 152 Cal.App.4th 63 [61 Cal.Rptr.3d 181], a medical doctor pleaded guilty in 2000 to taking indecent liberties with a child in North Carolina. He completed his probation in California and duly registered as a sex offender under Penal Code section 290. He also reported his crime to the Medical Board of California, which required him to serve a five-year supervised probation and undergo a psychiatric evaluation, but eventually found him fit to practice medicine.

In 2003, a new law was enacted mandating revocation of the medical license of anyone required to register as a sex offender. Stier then filed a petition for a writ of habeas corpus, claiming the requirement that he register as a sex offender constituted constructive custody for habeas corpus purposes. The trial court agreed and granted the writ, but the Court of Appeal reversed, explaining: "Although respondent asserted in his petition that 'his liberty is unlawfully restrained in violation of the laws of the State of California,' for purposes of proving entitlement to habeas corpus relief in the present case, he is not. Respondent's allegation that he is 'under the constructive custody of the State of California because if he fails to register, he is subject to criminal prosecution' does not 'satisfy the habeas corpus jurisdictional requirements under California law.' [Citation.] Since respondent 'is not in prison or on probation or parole or otherwise in constructive custody, the remedy of habeas corpus is not available to him—*and it is immaterial that lingering noncustodial collateral consequences are still attached to his conviction.*' [Citation.] *Neither the prospect of the loss of respondent's medical license nor the speculative risk of future custody in the event he fails to register as a*

*sex offender proves constructive custody as required in a habeas corpus action.* [Citations.] The 'states' sexual offender registration laws do not render a habeas petitioner "in custody" because they are a collateral consequence of conviction that do not impose a severe restraint on an individual's liberty. [Citations.]' " (*In re Stier, supra,* 152 Cal.App.4th at pp. 82–83, italics added; see also *In re Wessley W., supra,* 125 Cal.App.3d at p. 247 [listing of petitioner's name in a rap sheet is not constructive custody].) ·

▪ In addition to the sex offender registration requirement and the possible loss of a professional license, other collateral consequences of a criminal conviction may continue well after the conviction and the completion of the sentence, including one's "inability to vote, engage in certain businesses, hold public office, or serve as a juror." (*Maleng v. Cook* (1989) 490 U.S. 488, 491–492 [104 L.Ed.2d 540, 109 S.Ct. 1923].) Amicus curiae reminds us that a criminal conviction will often preclude legal firearm ownership.[4] While the continuing existence of the collateral consequences of a criminal conviction may be relevant to determining a mootness claim (*Maleng v. Cook,* at pp. 491–492), "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it" (*id.* at p. 492).

We face in the instant case the application of an increasingly familiar collateral consequence of a criminal conviction: deportation. Here, as in the companion case, *People v. Kim, supra,* 45 Cal.4th 1078, a longtime legal resident faces involuntary removal from the country and possibly permanent separation from his family and friends as a result of a criminal conviction entered long ago. Only one California case has addressed whether persons in INS custody pending deportation proceedings who have served their sentences and are no longer in actual state custody can be considered to be in the state's constructive custody for habeas corpus purposes. In *In re Azurin, supra,* 87 Cal.App.4th 20, the petitioner, a Philippine national living in the United States, pleaded guilty in 1990 to having committed a felony. He was

---

[4] For example, it is a felony for "[a]ny person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country" to "own[], purchase[], receive[], or [have] in his or her possession or under his or her custody or control any firearm." (Pen. Code, § 12021, subd. (a).) Some misdemeanor convictions result in a 10-year ban on firearm ownership. (*Id.,* subd. (c)(1).) Further, under federal law, no one "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" (18 U.S.C. § 922(g)(1)) or "who has been convicted in any court of a misdemeanor crime of domestic violence" (*id.,* § 922(g)(9)) may "possess . . . any firearm or ammunition" or may "receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" (*id.,* § 922(g)).

sentenced to a term in the California Youth Authority, thereafter completed his parole, and was released from custody. When the INS sought to deport him in 1998 by relying on his 1990 conviction, he filed a petition for a writ of habeas corpus, claiming he was in the constructive custody of the State of California because he was in INS custody as a result of his 1990 state conviction. The *Azurin* court concluded the boundaries of the constructive custody concept are not so expansive: "[A]lthough any custody of Azurin under the deportation proceedings was apparently based solely on the 'fact' of his 1990 conviction in California [citation], during those proceedings Azurin was not 'in the custody of the same sovereign responsible for the original conviction,' but instead was 'in the custody of the INS, an agency of a different sovereign.' [Citations.] Further, such deportation proceedings were simply a 'collateral consequence' of Azurin's 1990 conviction. [Citations.] As such, the pendency of those proceedings, without more, did not constitute 'custody' in California under such 1990 conviction for purposes of satisfying the habeas corpus jurisdictional requirements of California law." (*Id.* at p. 26, fn. omitted; see also *In re Wessley W., supra,* 125 Cal.App.3d 240 [defendant whose probation had terminated was not in constructive custody].)

We agree with this reasoning and apply it here. Villa completed his probation for his 1989 conviction many years ago and is no longer in any form of state custody, actual or constructive, as a result of that conviction. That the INS, a completely different governmental entity, chose to resurrect that old conviction and use it to form the basis of a new and collateral consequence for Villa, while undoubtedly unfortunate for him and his family, does not—without more—convert his detention by federal immigration authorities in Alabama into some late-blossoming form of custody for which the State of California is responsible.

Both parties and the Court of Appeal below discuss the relevance of the fact that an order to show cause, should one issue, would be directed to a person—Villa's federal custodian—who arguably would have no legal obligation to comply. Penal Code section 1477 specifies that "[t]he writ must be directed to the person having custody of or restraining the person on whose behalf the application is made, and must command him to have the body of such person before the Court or Judge before whom the writ is returnable, at a time and place therein specified." From this, the People argue habeas corpus is inappropriate here because "a California court lacks jurisdiction to direct federal immigration officials to comply with a state writ of habeas corpus." By contrast, Villa adopts the reasoning of the Court of Appeal below that "[s]ection 1477 is not an impediment to the court entertaining a petition . . . .

The import of section 1477 is not to effectuate habeas corpus relief, but is to commence adversarial proceedings."

■ That Villa is being detained by a different sovereign is not necessarily dispositive for habeas corpus purposes. True, in a typical habeas corpus case, the writ normally is directed to the custodian. (Pen. Code, § 1477.) "The role that the writ of habeas corpus plays is largely procedural. It 'does not decide the issues and cannot itself require the final release of the petitioner.' [Citation.] Rather, *the writ commands the person having custody of the petitioner* to bring the petitioner 'before the court or judge before whom the writ is returnable' (Pen. Code, § 1477), except under specified conditions (*id.*, §§ 1481–1482), and to submit a written return justifying the petitioner's imprisonment or other restraint on the petitioner's liberty (*id.*, § 1480)." (*People v. Romero* (1994) 8 Cal.4th 728, 738 [35 Cal.Rptr.2d 270, 883 P.2d 388], fn. omitted, italics added.) But as Villa argues, habeas corpus "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." (*Jones v. Cunningham, supra*, 371 U.S. at p. 243.)

Thus, for example, in *In re Shapiro* (1975) 14 Cal.3d 711 [122 Cal.Rptr. 768, 537 P.2d 888], we held that a state parolee subsequently arrested by federal authorities and detained in an out-of-state federal detention facility (McNeil Island in the State of Washington) could seek state habeas corpus relief when the state placed a detainer hold on him with federal officials. (*Id.* at pp. 714–715.) Although Shapiro (like Villa) was being held by a different sovereign in a different state, his petition did not seek to ameliorate the terms or conditions of his confinement in the federal penitentiary or to have federal officials respond to the allegations. Rather, it was directed to the California Adult Authority (the precursor to the Board of Parole Hearings). "It is the existence of the detainer initiated in California which is causing the petitioner deleterious consequences at McNeil Island, and petitioner correctly concludes that if the parole violator warrant is invalid the detainer itself will be removed." (*Id.* at p. 715.)

■ The critical factor in determining whether a petitioner is in actual or constructive state custody, then, is not necessarily the name of the governmental entity signing the paycheck of the custodial officer in charge, or even whether the petitioner is within the geographic boundaries of the State of California. Instead, courts should realistically examine the nature of a petitioner's custody to determine whether it is currently authorized in some way by the State of California. Unlike the petitioner in *In re Shapiro, supra*, 14 Cal.3d

711, for example, Villa is not subject to a detainer hold placed by California state officials. Nor is his detention in Alabama either a part of the sentence (probation) the Alameda County Superior Court imposed for his 1989 crime (*In re Osslo, supra*, 51 Cal.2d at p. 376 [probation is custody for habeas corpus purposes]) or otherwise authorized by state law. Instead, his detention is directly traceable to applicable federal laws governing immigration and to the discretion of federal immigration officials and, presumably, that of the United States Attorney General. Under such circumstances, Villa cannot be considered to be in custody for state habeas corpus purposes.

■ Villa raises several arguments against this conclusion, but none is availing. Emphasizing the flexible nature of the habeas corpus remedy, he argues we should further expand the definition of "custody" to include his case. Indeed, he frankly admits he "seeks a redefinition of the habeas corpus remedy beyond the traditional prerequisite of actual state custody." As we have explained, however, although a liberalization of the meaning of "custody" has occurred over the years, all such expansions have involved substitutes (such as parole, probation, or release on bail) for an actual custodial sentence the trial court could have imposed, or are otherwise related to some official state action (like a detainer hold) connected to a person's custodial status. The present restraint on Villa's freedom, while perhaps factually traceable to his 1989 state conviction (inasmuch as the immigration authorities cite the conviction as the reason for deportation), simply has too little to do with his long-final state conviction and completed sentence. Villa's proposal for a further expansion of the meaning of custody for habeas corpus purposes would stretch the concept past the breaking point and convert habeas corpus into an all-inclusive, free-floating, postconviction remedy untethered to its historical moorings.

■ Villa also argues that both state and federal law allow the filing of a habeas corpus petition to challenge the validity of a prior conviction, even though the sentence for the prior conviction has been fully served. The existence of prior felony convictions is, of course, a common reason why a criminal sentence is enhanced (*People v. Black* (2007) 41 Cal.4th 799, 818 [62 Cal.Rptr.3d 569, 161 P.3d 1130] [" '[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' "]), and habeas corpus is available to challenge the constitutionality of such prior convictions (*People v. Allen* (1999) 21 Cal.4th 424, 429 [87 Cal.Rptr.2d 682, 981 P.2d 525]). But when an offender's present sentence is lengthened as a result of a prior conviction, the offender's custody is directly attributable to the prior conviction. The sentence for Villa's 1989 crime, by contrast, terminated long ago, and the state has not sought to impose any additional punishment on him as a result of that offense.

*Garlotte v. Fordice* (1995) 515 U.S. 39 [132 L.Ed.2d 36, 115 S.Ct. 1948], also cited by Villa in support, is similarly distinguishable. In *Garlotte,* the petitioner was sentenced to a determinate term of three years' imprisonment for marijuana possession with the intent to distribute. He was also sentenced to two concurrent indeterminate life terms for two counts of murder, to be served consecutively to the term for marijuana possession. The trial court ordered the petitioner to serve the determinate sentence first and then at least 10 years of the life sentence. The petitioner filed a habeas corpus petition seeking to withdraw his plea to the possession count, but as his three-year sentence for that crime had expired, the lower courts ruled he was no longer in custody for that crime despite the fact he was still serving two life terms. The high court disagreed, viewing the petitioner's "sentences in the aggregate, not as discrete segments" (*id.* at p. 47) and noting that a reversal of the three-year sentence for possession could have affected the setting of an overall parole eligibility date (*id.* at p. 46, fn. 5). Thus, for habeas corpus purposes he was deemed still in custody for the marijuana possession conviction.

As is apparent on its face, *Garlotte* is distinguishable from Villa's case because, viewing the sentences in the aggregate, the petitioner in *Garlotte* was still in custody for his crimes. By contrast, Villa has been free of any state custody or restraint since at least 1992, when his three-year probationary period ended.

Villa also argues there must be some form of remedy to persons in his position, arguing that deportation is a harsh consequence for his long-final criminal conviction. But Villa was afforded legal counsel and the right to a jury trial in 1989. Prior to accepting his guilty plea, the trial court admonished him in accordance with Penal Code section 1016.5 regarding the immigration consequences of the plea. Villa could subsequently have moved to withdraw his plea (*id.,* § 1018), could have appealed, and then could have petitioned for review in this court. While serving his three-year probation, he could have sought relief on habeas corpus. In short, his available remedies under state law for an allegedly uninformed plea were ample.

We appreciate that the consequences for Villa on the facts of this case seem harsh and that "[a]lthough deportation is not technically a criminal punishment, it may visit great hardship on the alien. [Citation.] As stated by the Court, speaking through Mr. Justice Brandeis, in *Ng Fung Ho* v. *White,* 259 U.S. 276, 284 [66 L.Ed. 938, 42 S.Ct. 492], deportation may result in the loss 'of all that makes life worth living.' " (*Fiswick* v. *United States* (1946) 329 U.S. 211, 222, fn. 8 [91 L.Ed. 196, 67 S.Ct. 224].) This complaint, however valid, is more appropriately directed to the federal authorities who have chosen—belatedly—to deport Villa for his past transgression after

initially granting him permanent lawful resident status and allowing him to live in this country for 15 years despite knowledge of his criminal conviction. Villa's complaints may also be fairly directed to the Legislature, which has enacted statutory remedies for other persons facing analogous problems. (See, e.g., Pen. Code, § 1016.5 [authorizing a motion to vacate for a trial court's failure to admonish defendant of immigration consequences; no custody requirement]; *id.*, § 1473.6 [authorizing a motion to vacate for newly discovered evidence of fraud or false testimony by a government agent; no custody requirement].)[5] As a final avenue of relief, Villa can seek a pardon from the Governor. (*Mendez v. Superior Court* (2001) 87 Cal.App.4th 791, 803 [104 Cal.Rptr.2d 839].) We understand that these meager options may be cold comfort for him, but their negligible nature does not convince us we should alter the law of habeas corpus to hold he is in state custody for habeas corpus purposes.

Finally, Villa contends he is entitled both to a writ of error *coram nobis* and to vacate his plea under Penal Code section 1016.5. He did not raise these issues in a petition for review in this court or in an answer to the People's petition. Accordingly, they are not properly before us. (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654, fn. 2 [31 Cal.Rptr.3d 147, 115 P.3d 460]; see Cal. Rules of Court, rule 8.516.) In any event, as we explain in the companion to this case, *People v. Kim, supra,* 45 Cal.4th 1078, claims such as Villa raised in his *coram nobis* petition in the trial court— ineffective assistance of counsel, violation of the Vienna Convention—are errors of law, not of fact, and are thus not cognizable on *coram nobis.* Further, the record indicates the trial court informed him of the potential immigration consequences of his plea, thereby satisfying Penal Code section 1016.5.

---

[5] "The legislative history of [Penal Code] section 1473.6 reflects the belief that at the time of the introduction of the legislation, 'Currently, other than a pardon, no remedy exists *for those no longer in the system* to challenge their judgment when they learn that their conviction was obtained in part because of fraud or false evidence by a government official.' (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. 5.) The legislation was originally introduced to address a problem illustrated by the so-called Rampart scandal [citation] in which it was discovered that certain Los Angeles Police Department officers had engaged in misconduct, including planting evidence, filing false police reports, committing perjury, and creating nonexistent confessions. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. 6; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, pp. 3–4.) Because the misconduct was discovered many years after it occurred, *those who were no longer in custody at the time of the discovery of the misconduct would not be able to set aside their convictions.* (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. 6; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, pp. 3–4; [citation].)" (*People v. Germany* (2005) 133 Cal.App.4th 784, 791 [35 Cal.Rptr.3d 110], italics added, fns. omitted.)

## CONCLUSION

The Court of Appeal below, construing Villa's petition as one for habeas corpus, denied relief on the ground that he had failed to allege he was restrained of his liberty "solely because of the California conviction" he suffered in 1989. We agree with this result for a different reason: Villa is in neither actual nor constructive state custody as a result of his 1989 conviction. Accordingly, the judgment of the appellate court is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.