Filed 9/25/13  P. v. Sibbu CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GOLDWIN SIBBU,<br><br>        Defendant and Respondent. | A136486<br><br>(Sonoma County<br>Super. Ct. No. SCR532176) |

**INTRODUCTION**

The People[1] appeal an order of the Sonoma County Superior Court granting defendant Goldwin Sibbu's motion to vacate the November 21, 2008, judgment sentencing him to four years in prison for robbery (Pen. Code, § 211). [2]  The court considered the motion as a petition for habeas corpus.  Following briefing by both sides and an evidentiary hearing, the court set aside the judgment, including Sibbu's plea, in its entirety on the grounds it was legally invalid *ab initio* for violation of his constitutional right to effective assistance of counsel, where counsel did not advise Sibbu of the immigration consequences of his plea.  At no point in the proceeding below did the People object to the court's considering the matter as a petition for habeas corpus on the ground that appropriate habeas corpus procedure was not followed.  We shall affirm.

---

[1] On this appeal, the People are represented by the Sonoma County District Attorney; not the Attorney General.

[2] All statutory references are to the Penal Code, unless otherwise indicated.

1

# BACKGROUND[3]

On May 12, 2008, Sibbu pleaded no contest to robbery (§ 211) and admitted personally using a knife in the commission of the offense (§ 12022, subd. (b)(1)).[4] On November 21, 2008, the court sentenced him to state prison for four years. Sibbu, who had been legally admitted to the United States when he was 12 years old, was a citizen of the Philippines and a lawful permanent resident of the United States. Immediately after his release from prison on parole in October 2011, Sibbu was taken into custody by U.S. Immigration and Customs Enforcement (ICE). ICE placed him in mandatory detention because his robbery conviction is considered a crime of violence, an aggravated felony, triggering mandatory deportation (8 U.S.C. § 1227(a)(2)(A)(iii)), mandatory detention (8 U.S.C. § 1226(c)), and disqualification from discretionary relief from deportation (8 U.S.C. § 1229b(a)(3)).

On July 2, 2012, Sibbu filed a motion (§ 1385) "suggesting" the court dismiss the case on grounds that his attorney had been constitutionally ineffective in failing to advise him of the immigration consequences of his plea. On July 12, Sibbu withdrew that motion and moved to vacate his conviction based on ineffective assistance of counsel. The People were ordered to respond by July 26, 2012. Sibbu's motion stated that Sibbu

---

[3]As a threshold matter, we note the notice of appeal filed by the People cited section 1238, subdivision (a)(9), authorizing the People to appeal from "An order denying the motion of the people to reinstate the complaint or a portion thereof, pursuant to section 871.5." This provision does not apply here. The court did not deny any motion of the People to reinstate a complaint or any portion thereof. However, appropriate statutory authority for this appeal is found in section 1238, subdivision (a)(5) (authorizing the People to appeal "[a]n order made after judgment, affecting the substantial rights of the people") and in section 1506 (authorizing an appeal "by the people from a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought . . . .").

[4]On the constitutional rights waiver form, Sibbu checked the box stating he understood that "if I am not a citizen of the United States, conviction of the offense(s) may/will (circle one) have the consequences of deportation . . . ." Despite the instruction, neither the "may" nor the "will" was circled.

2

was serving a three-year term of parole, and was therefore in constructive custody for purposes of California habeas corpus jurisdiction.

Exhibits filed in support of the motion included a declaration from Sibbu stating he had not understood the immigration consequences of his plea and asking to be allowed to enter an equivalent, non-deportable disposition in the case, with equivalent punishment and a declaration by Karen Silver, a deputy public defender for Sonoma County who had represented Sibbu on the robbery charges, in which she stated under penalty of perjury that at the time Sibbu was sentenced, she was not aware that he was not a citizen of the United States, but was instead a lawful permanent resident. She stated she should have been aware of his true immigration status and had she been aware of his true status, she would have investigated the immigration consequences of his plea, and tried to obtain an equivalent non-deportable disposition if possible.[5]

The People filed opposition on July 26, 2012, arguing that no legal basis existed to vacate the sentence under section 1016.5. On July 30, Sibbu filed a reply to the opposition, requesting that if the court did not consider the matter as a motion to vacate under section 1016.5, the court treat the motion as a habeas corpus petition.

At the outset of the hearing held August 16, 2012, the court recounted, "This was originally filed as a motion to vacate the conviction in this case. The court had indicated that I was going to treat this more as a habeas corpus type proceeding." The court explained that it had read the Silver declaration and that it had put the matter over one week "to give the People an opportunity to present any rebuttal evidence to the declaration. If they were not able to do that, I was going to go forward based on the declarations." The court asked whether the People wanted "an opportunity to present any evidence in regards to this issue?" The People responded that they "wanted an opportunity to question Ms. Silver about her declaration."

Silver appeared and testified. She explained how she had overlooked the issue of Sibbu's immigration status, confirmed that she did not have a specific memory of going

---

[5]Silver also stated Sibbu's mental age was about six years eight months.

over the immigration status with Sibbu and stated that "according to my records, I did not realize Mr. Sibbu was not a citizen of the United States when he entered his plea." On cross-examination Silver pointed out that there was nothing in the probation report about Sibbu's immigration status, "so I know for sure that I didn't discuss it." She felt "with some confidence" that had she known that there was an immigration issue, she would have been able to get a different result for Sibbu. She was confident that "had this [immigration consequence] been known . . . we would have worked something out that would have allowed for a disposition that gave [Sibbu], you know, serious consequence, serious conviction, but not so that he would be without ever having to be able to stay in the United States."

After cross-examining Silver, the People submitted the matter without presenting any further evidence. At the close of the hearing, the court stated: "All right. I'm going to grant—like I said, I'm treating this as a Writ of Habeas Corpus. I'm going to grant the relief requested, and that is to allow his previous plea to be withdrawn and conviction set aside." The court stated its decision was, "Based on the testimony of Ms. Silver that she did not properly advise him of his immigration issues that, in fact, has now caused him to be detained by our Federal government." The court issued a "no-bail bench warrant," to allow it to "retain jurisdiction and, hopefully, put a detainer on him," so that Sibbu "can return to this County for court proceedings." The People filed this timely appeal of that order.

## DISCUSSION

In their appellant's opening brief, the People argue the trial court lacked authority to vacate a conviction outside the statutory prescriptions of section 1016.5, which provides a statutory postjudgment remedy for *the trial court's* failure to provide defendant with the required statutory advisements regarding the potential immigration consequences of a plea of guilty or nolo contendere. Section 1016.5 does not provide a remedy for ineffective assistance of counsel where counsel has failed to advise the defendant of the immigration consequences of his plea. (*People v. Chien* (2008) 159

4

Cal.App.4th 1283, 1285.)[6] The People argue the court should have treated defendant's motion to vacate as a writ of error *coram nobis*, and then denied it on the ground that ineffective assistance of counsel is not a proper basis for *coram nobis* relief. (See, e.g., *People v. Kim* (2009) 45 Cal.4th 1078, 1093, 1095, 1104, 1108–1109 [ineffective assistance not grounds for *coram nobis* relief]; accord *People v. Mbaabu*, *supra*, 213 Cal.App.4th at pp. 1146, 1147.) The People also argue in their opening brief that defendant should proceed by seeking an authorized postconviction remedy, such as by filing of a petition for writ of habeas corpus raising the issue of ineffective assistance of counsel. They state that "[i]f defendant were to pursue a petition for writ of *habeas corpus,* the People would request that defendant's conviction be reinstated and that the normal procedures for a writ of *habeas corpus* (delineated in Penal Code [s]ections 1473 [through] 1508) be followed." Nowhere in their appellant's opening brief do the People acknowledge that the trial court *did* treat the motion as a petition for habeas corpus or argue that it erred in doing so.

It is undisputed that counsel's failure to advise a defendant of the immigration consequences of his or her plea constitutes ineffective assistance of counsel in violation of the Sixth Amendment. (*Padilla v. Kentucky*, *supra*, 559 U.S. at pp. 1478, 1486–1487.) It is also undisputed that habeas corpus is an appropriate vehicle by which a defendant in constructive custody may raise, after his conviction, the issue of counsel's failure to advise of the immigration consequences of defendant's plea. (E.g., *People v. Kim*, *supra,* 45 Cal.4th at p. 1099 ["defendant could have petitioned for a writ of habeas corpus while he was still in actual or constructive state custody, that is, in prison or on parole"]; *People v. Mbaabu*, *supra*, 213 Cal.App.4th at p. 1149 ["For a defendant still in actual or

___

[6] "Section 1016.5 addresses only the duty of the court to admonish a defendant of the possibility that a conviction may result in removal from the United States, or preclude naturalization (*People v. Chien*[, *supra*,] 159 Cal.App.4th [at p.] 1288), and does not address the obligation to explain the more particular consequences required under the holding of *Padilla v. Kentucky* [(2010)] 559 U.S. 356. Defendant's motion, grounded on counsel's obligation to advise defendant of immigration consequences under *Padilla,* were not statutory motions to vacate pursuant to section 1016.5." (*People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1145.)

constructive custody, a petition for writ of habeas corpus in the trial court is the preferred method by which to challenge circumstances or actions declared unconstitutional after the defendant's conviction became final."]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1482 [in which this court  affirmed the denial of a petition for writ of *coram nobis* based on the attorney's failure to adequately advise the defendant of the immigration consequences of his plea*,* but considered the matter as on a petition for writ of habeas corpus].)

Habeas corpus relief is not available to a defendant who has been released and is no longer subject to parole or probation, as he or she is no longer in constructive custody. (*People v. Villa* (2009) 45 Cal.4th 1063, 1069–1070; see also *People v. Mbaabu, supra,* 213 Cal.App.4th at p. 1149; *People v. Kim*, *supra*, 45 Cal.4th at p. 1108.)  That, however, is not the case here.  Defendant was on parole—and hence, in constructive custody— when the court granted the relief sought.

In their reply brief, the People for the first time assert that the court erroneously granted habeas corpus relief where it did not comply with the statutory requisites for habeas relief—specifically, it did not issue the alternative writ or order to show cause and did not provide them an opportunity to file a return before granting the relief sought.  In *People v. Romero* (1994) 8 Cal.4th 728, 734, the Supreme Court held that when presented with a petition for a writ of habeas corpus, the court may not grant the relief requested in the petition (in that case vacating a judgment of conviction for five felonies) without first issuing a writ of habeas corpus or an order to show cause.  The court explained:  "The state Constitution grants original jurisdiction in habeas corpus matters to this court and to 'the courts of appeal, superior courts, and their judges.'  (Cal. Const., art. VI, § 10.)  In exercising this original jurisdiction, the Courts of Appeal 'must abide by the procedures set forth in Penal Code sections 1473 through 1508.'  [Citation.]"  (*Id.* at p. 737.)

It may well be that the court erred in failing to formally issue an alternative writ or order to show cause, thus inviting the People to file a return.  We observe, however, that the trial court notified the People it was considering the motion and allowed the People to file opposition, which they did.

At the evidentiary hearing on the matter, the People *made no objection whatsoever* to the court's declared intent to consider the matter as a habeas corpus proceeding. By failing to object at any time before or during the hearing to the court's proceeding in such manner, they prevented the trial court from timely correcting any error, and they have forfeited the right to raise such error on this appeal. (E.g., *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 968–969; see also *Keener v. Jeld–Wen, Inc.* (2009) 46 Cal.4th 247, 264 [forfeiture rule is designed to deter gamesmanship and generally applies in all civil and criminal proceedings]; *People v. Simon* (2001) 25 Cal.4th 1082, 1103 [constitutional or other right may be forfeited by failing to timely assert it; the purpose of the doctrine is to encourage a party to bring errors to the attention of the trial court so they may be avoided or corrected]; Eisenberg, et al, Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶¶ 8:249, 8:261, 8:264, pp. 8-166 to 8-169.)

Although issues affecting the trial court's *subject matter jurisdiction* are never waived and thus can be asserted for the first time on appeal (Eisenberg, et al, Civil Appeals and Writs, *supra,* ¶ 8:273, p. 8-177), the court did not lack fundamental subject matter jurisdiction in this case. In *People v. Romero*, *supra*, 8 Cal.4th 728, the Supreme Court held that in exercising original jurisdiction in habeas matters, courts must follow the procedures set forth in the Penal Code for such matters. However, it did not hold that the failure to follow those procedures would deprive the court of *fundamental* jurisdiction in habeas proceedings where it otherwise had such jurisdiction to proceed. Hence, we conclude that the People forfeited the claim of error raised in their closing brief that the trial court erred in failing to issue the writ or order to show cause before vacating Sibbu's plea and conviction.

## DISPOSITION

The order is affirmed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Brick, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.