Filed 2/7/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B282107 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA161254) |
| v. | |
| ARNULFO R. LANDAVERDE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Michael J. Codner for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

We affirm the denial of appellant's motion to vacate his 1998 plea of guilty to committing a lewd act with a child under the age of 14 in violation of Penal Code section 288, subdivision (a).[1] This motion, which was brought pursuant to the procedural mechanism set forth in section 1473.7, was based on the substantive allegation that appellant's Sixth Amendment right to the effective assistance of counsel was violated by his trial counsel's supposed failure to research and advise him of the immigration consequences of that plea.[2]

We conclude that (1) section 1473.7 provided a procedural vehicle through which appellant could litigate the validity of his plea; (2) appellant's counsel's failure to advise him of the immigration consequences of his plea did not constitute deficient professional performance under the then-contemporary standard; and, (3) appellant has failed to demonstrate that he suffered any legally cognizable prejudice from the alleged deficient professional performance.

## BACKGROUND

According to the federal immigration court, appellant entered the United States in 1989. In July 1998, appellant pled guilty to one count of committing a lewd act with a minor (§ 288, subd. (a).) This crime carries a three-, six-, or eight-year state prison sentence. The victim was 13 years old.

---

[1]    Undesignated statutory citations are to the Penal Code.

[2]    Although the record is equivocal on this point, for purposes of this appeal, we will assume that appellant's trial counsel did not advise him of the immigration consequences of his plea.

Pursuant to his plea agreement, appellant was granted probation for five years under conditions that included the six days in county jail, which he had already served, performance of 200 hours of community service, completion of a counseling program, staying away from the victim, not dating girls under the age of 18, and registering as a sex offender.

In 2007, appellant was placed in federal removal proceedings. The immigration judge concluded as follows: "Although [appellant] was convicted of an aggravated felony, because he was not sentenced to five years incarceration his conviction does not automatically bar him from withholding of removal under either 241(b) or the Convention Against Torture. In a situation such as this the Court has to evaluate the crime to determine whether or not it constitutes a particularly serious crime."

The immigration judge summarized the facts in the probation officer's report as follows: Appellant "was aware of the age of the victim, . . . they engaged in sexual intercourse after dating for three months, and . . . they went out five to 10 times before having sex. And that he took her to an apartment where they voluntarily engaged in sexual intercourse and that he used an assumed name with the victim." When appellant asked the victim's mother if he could marry the victim, the victim's mother called the police. In the immigration proceeding, appellant denied that he was guilty of any lewd act. The immigration judge noted that appellant also denied committing a theft notwithstanding his theft conviction.

3

In 2016, appellant moved to withdraw his guilty plea pursuant to section 1016.5.[3] (*People v. Landaverde* (Apr. 19, 2017, B276912) [nonpub. opn.].) In his declaration in support of that motion, appellant averred that "[n]either the Court nor my attorney advised me that by pleading guilty, I would or could be removed from the country and/or lose my ability to fight for my legal residence." Appellant further averred that he would not have pled guilty had he known the potential immigration consequences and "would have insisted on taking the case to trial . . . ." Appellant also averred that during the immigration proceedings he received ineffective assistance of counsel because his counsel "improperly conceded my crime qualifying as a particularly serious crime."

We affirmed the denial of appellant's motion to vacate pursuant to section 1016.5. (*People v. Landaverde, supra*, B276912.) We concluded that the record showed that appellant was properly advised of the immigration consequences of his plea under section 1016.5. (*People v. Landaverde, supra*, B276912.) Specifically, the trial court had informed him: " 'If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.' " (*Ibid.*)

Based on an almost identical declaration, in February 2017, appellant filed a motion alleging that his plea must be

---

[3] On our own motion, we take judicial notice of the record in appellant's prior appeal, case No. B276912.

4

vacated under section 1473.7.  He argued that his trial "counsel was not effective, in that Defendant was not correctly advised by counsel regarding the immigration consequences of his plea, and there is a reasonable probability that but for failure to advise Defendant of the immigration consequences of his plea, Defendant would not have pleaded guilty and would have insisted on proceeding to trial."  The trial court denied appellant's current motion to vacate his plea, and this appeal followed.

## DISCUSSION

**1.  Procedure**

Section 1473.7, which became effective on January 1, 2017, provides that a person who is no longer imprisoned may move to vacate a judgment if the "conviction or sentence is legally invalid due to a *prejudicial error* damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."  (§ 1473.7, subd. (a)(1), italics added.)  As the italicized language provides, a defendant making such a claim is required to demonstrate that he or she suffered "prejudicial error."

The legal effect of section 1473.7 is procedural.  Motions for relief based on alleged violations of immigration protections are almost always made years or even decades after the underlying criminal convictions.  Commonly, they are brought only after removal proceedings or other adverse immigration actions are initiated by the federal government.  This passage of time, often referred to as a lack of "due diligence," has, by itself, created insurmountable procedural bars that have

foreclosed virtually all avenues of collateral attack on criminal judgments, regardless of the merits of the underlying action.

This is clearly demonstrated by two of the leading California Supreme Court cases in this area. Applying the traditional rule that postconviction relief must be sought with "reasonable diligence" from the time that the defendant became aware, or should have become aware, of the issue that underlies the challenge (see *People v. Shipman* (1965) 62 Cal.2d 226, 230), our Supreme Court held in *People v. Kim* (2009) 45 Cal.4th 1078, that petitions for writ of error *corum nobis*, the legal equivalent of a motion to vacate a plea, must be brought within a "reasonable time" of the defendant becoming aware of the issue. (*Id.* at p. 1096.) Noting that the defendant in that case must have been aware of his immigration status at the time he entered his plea, the Supreme Court ruled that the "reasonable" time for seeking postconviction relief began to run from the time the defendant was informed *in court* of immigration consequences. (See, e.g., *id.* at pp. 1098-1099.)

*People v. Villa* (2009) 45 Cal.4th 1063 did not deal directly with a timing issue characterized as "due diligence" but, rather, applied a limitation on relief that resulted indirectly from the passage of time. *Villa*'s holding is that section 1473, subdivision (a)'s, requirement that a person seeking habeas corpus be "unlawfully imprisoned or restrained of his or her liberty" renders habeas corpus unavailable to a defendant who has completed his or her *state* sentence but who is in *federal* immigration custody pending removal or other immigration proceedings. This, too, had the effect of placing a time-based limitation on the seeking of relief and created a

6

substantial bar to challenging the effectiveness of counsel in immigration cases.

These two cases have repeatedly been cited as erecting fatal procedural bars to relief for defendants who face adverse immigration consequences stemming from past criminal convictions and are seeking judicial relief from alleged defects in those convictions. (E.g., *People v. Aguilar* (2014) 227 Cal.App.4th 60; *People v. Mbaabu* (2013) 213 Cal.App.4th 1139; *People v. Hyung Joon Kim* (2012) 212 Cal.App.4th 117; *People v. Gari* (2011) 199 Cal.App.4th 510.)

Section 1473.7 was enacted to remove those barriers. Subdivision (a) of section 1473.7, eliminates the "imprisoned or restrained" requirement of section 1473, subdivision (a)(1), in immigration cases. Section 1473.7, subdivision (b), now allows motions to vacate pleas or to otherwise seek relief based on alleged errors related to immigration issues to be made "with reasonable diligence" after the later of the following: (1) the moving party receives a notice to appear in immigration court or some other notice from immigration authorities alleging a criminal conviction as a basis for removal; or, (2) the date of finality of a removal order based on a criminal conviction.

These are both significant changes in the law and create a greatly expanded procedural window for defendants to seek relief in immigration cases. There has been no argument that appellant does not fall within the purview of section 1473.7 and that his challenge to his underlying conviction is procedurally barred. We hold that section 1473.7 applies to appellant's action and that there is no procedural bar to his bringing it.

## 2. Ineffective Assistance of Counsel

Section 1473.7 does not, however, affect the standards by which motions to vacate pleas based on an alleged Sixth Amendment violation due to deficient performance of counsel are decided.  A defendant who seeks to vacate a conviction on this ground must still establish two things: (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that he or she was prejudiced by that deficient performance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*); *People v. Williams* (1997) 16 Cal.4th 153, 215.)  Section 1473.7, under which this action was brought, seemingly codifies this requirement by placing the burden on the defendant to establish cause for relief by a preponderance of the evidence. (§ 1473.7, subd. (e).)  Although existing case law does not use the phrase "preponderance of the evidence" in its formulation of the test for ineffective assistance of counsel, section 1473.7's requirements essentially track the showings that were required prior to the enactment of section 1473.7.  (See *In re Cordero* (1988) 46 Cal.3d 161, 180.)

### a. Prong One: Deficient Performance of Trial Counsel

The United States Supreme Court's decision in *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), forms the basis for appellant's argument that his trial counsel's performance was defective.  In *Padilla*, the United States Supreme Court ruled that defense attorneys have an affirmative obligation to provide competent advice to noncitizen criminal defendants regarding the potential immigration consequences of guilty or no contest pleas.

Prior to *Padilla*, the immigration ramifications of guilty or no contest pleas were generally considered indirect or "collateral" consequences of those pleas, about which a defendant need not be advised. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 198; *People v. Limones* (1991) 233 Cal.App.3d 338, 344; *People v. Barocio* (1989) 216 Cal.App.3d 99, 107-108.)[4] Therefore, failure to advise a defendant about those ramifications could not support a claim of ineffective assistance of counsel under the first "prong" of the *Strickland* analysis because such a failure did not fall below a general standard of reasonableness.

*Padilla* changed this. The effect of this change was discussed in *Chaidez v. United States* (2013) 568 U.S. 342. In *Chaidez*, the United States Supreme Court held that *Padilla* had had the effect of suddenly changing the nature of immigration issues from being "collateral consequences" of pleas to something unique, roughly akin to direct

<hr>

[4] Based on local statutes, California, along with a handful of other jurisdictions, eventually adopted a modified approach that allowed relief based on claims of ineffective assistance of counsel when an attorney affirmatively misadvised a defendant about the immigration consequences of a plea because legally incorrect advice fell below that reasonableness standard, but retained the traditional rule that failure to advise at all did not fall below the standard. (*In re Resendiz* (2001) 25 Cal.4th 230, abrogated by *Padilla, supra*, 559 U.S. 356, 369-370.)

This exception to the general rule is inapplicable to the case at bench because appellant does not allege that his trial counsel affirmatively misadvised him.

consequences. However it was characterized, the United States Supreme Court ruled that *Padilla* had created a new affirmative obligation on trial counsel to understand and accurately explain the immigration consequences of a plea to a defendant prior to the entry of that plea where no such duty had existed before. This rule was not based on prevailing professional standards but, rather, on a determination that immigration consequences were potentially so profound that trial counsel had an obligation to accurately advise their clients about them. Therefore, the court in *Chaidez* held that, under the rules set out in *Teague v. Lane* (1989) 489 U.S. 288, the *Padilla* ruling could not be applied retroactively to cases, such as appellant's, that were final at the time of the *Padilla* decision.

The effect of this is that appellant's trial counsel had no affirmative obligation to advise him of the immigration consequences of his plea at the time that plea was taken. Therefore, his failure to do so did not fall below the then-contemporary reasonable objective standard of practice. Thus, appellant has failed to satisfy the first prong of the *Strickland* test and his claim of ineffective assistance of counsel must fail.

Perhaps in recognition that the *Padilla* ruling does not apply retroactively to his case, appellant also argues that California imposed an independent pre-*Padilla* duty on trial counsel to inform their clients of the immigration consequences of their pleas. This argument is unavailing.

Appellant's reliance on recently enacted sections 1016.2 and 1016.3, which were intended to codify both the *Padilla* requirements and any existing California decisional law, is misplaced. These provisions cannot apply to the case at bench

10

for two reasons.  First, these statutes, which were added in 2015 by Assembly Bill No. 1343 (2015-2016 Reg. Sess.), were, by their terms, enacted to codify the *Padilla* ruling (§ 1016.2, subd. (h)).  This would include the restriction on retroactivity, which occurred in 2013 in the *Chaidez* decision, under the familiar rule that the Legislature is presumed to be aware of decisional law and to have enacted statutes in light of that decisional law.  (*People v. Giordano* (2007) 42 Cal.4th 644, 659.)

Second, section 3 creates a strong presumption that changes to the Penal Code are to be applied prospectively only, unless it is " 'very clear' " from either the language of the statute or extrinsic sources that the Legislature intended retroactive application.  (*People v. Brown* (2012) 54 Cal.4th 314, 324.)  Sections 1016.2 and 1016.3 contain no such statement of legislative intent and, given their repeated references to the *Padilla* decision, it is clear that the Legislature did *not* intend that sections 1016.2 and 1016.3 apply retroactively.

Appellant's argument is also based on language in the introduction to section 1016.2, subdivision (a), referencing both *Padilla* and a trio of pre-*Padilla* California decisions.  However, an examination of the three pre-*Padilla* cases cited in section 1016.2, subdivision (a), as defining California law on counsel's obligations, demonstrates that there was, in fact, no such independent duty.

In *People v. Soriano* (1987) 194 Cal.App.3d 1470, the defendant's trial counsel, in response to repeated questions about potential immigration consequences, advised him that his plea "might" have adverse consequences, similar in

11

language to that required by section 1016.5.  This advice was erroneous and trial counsel had undertaken no effort to obtain accurate information.  The holding in *Soriano* was that this erroneous advice constituted ineffective assistance of counsel because, *when asked*, trial counsel had an obligation to research further and provide accurate information.  *Soriano* does not stand for the proposition that, in the absence of inquiry from the defendant, defense counsel had an affirmative obligation to research and advise the defendant of his immigration consequences.

*People v. Barocio, supra*, 216 Cal.App.3d 99 similarly did not create an independent pre-*Padilla* duty to advise defendants of immigration consequences of their pleas.  In *Barocio*, the defendant's trial attorney failed to seek a judicial recommendation against deportation.  There was no issue about counsel's advice to the defendant.  Indeed, the court in *Barocio* specifically held that while section 1016.5 imposed a duty on the *court* to warn of the possible immigration consequences of a plea, *counsel* had no corresponding duty because immigration concerns were "collateral consequence[s]" of the plea.  (*Barocio*, at pp. 107-108.)  The only deficiency found in *Barocio* was trial counsel's failure to advise the defendant of the right to a recommendation against deportation and the case was remanded to the trial court for counsel to seek a recommendation against deportation.

Finally, in *People v. Bautista* (2004) 115 Cal.App.4th 229, there was expert evidence presented to the court that an "immigration neutral" plea bargain was generally available to defendants who were similarly situated to the defendant in that case.  This expert testimony established that defense

12

counsel's admitted failure to investigate such an "immigration neutral" disposition fell below the reasonable standard of practice. Again, there is no suggestion in *Bautista* that trial counsel had a pre-*Padilla* duty to research and explain immigration consequences to their clients. Appellant has presented no evidence that such an "immigration neutral" disposition was available in his case and, from the comments of the immigration court judge, it appears that escaping a five-year prison sentence gave appellant a significant advantage under the then-prevailing immigration law.

Because appellant's trial counsel had no duty in this pre-*Padilla* case to research and advise appellant of the potential immigration consequences of his plea, appellant has failed to carry his burden of establishing the first prong of the *Strickland* test, that trial counsel's performance fell below an objectively reasonable standard.[5]

---

[5] The California Supreme Court's decision in *People v. Patterson* (2017) 2 Cal.5th 885 does not alter this result. In *Patterson*, the defendant pled guilty on March 13, 2013. Therefore, Patterson's case occurred three years after the *Padilla* decision, meaning that his trial counsel did have the obligation created by *Padilla* to properly advise him. His trial counsel did not know the immigration consequences and did not advise him of those consequences, a clear violation of the requirements of *Padilla*. Our Supreme Court held that the fact that the defendant was advised under section 1016.5 did not substitute for the required advisement by counsel and did not act as a bar to his setting aside his plea. *Patterson* provides no authority for the proposition that counsel had an obligation to research and advise on immigration consequence prior to the *Padilla* decision.

13

### *b.* **Prong Two: Prejudice**

The United States Supreme Court recently examined the second prong of the *Strickland* analysis, prejudice, in the context of an immigration case in *Lee v. United States* (2017) ___ U.S. ___ [137 S.Ct. 1958] (*Lee*). While recognizing that determination of prejudice is to be made on a case-by-case basis in light of all of the circumstances (137 S.Ct. at p. 1966), the United States Supreme Court examined a number of factors in determining whether the defendant in *Lee* was prejudiced by his counsel's plainly inadequate representation.

The first, but not determinative, factor was the likelihood of success at trial. In *Lee*, the defendant had essentially confessed to the crime, which rendered his chances at trial "grim," in the words of the court. In the case at bench, there is no confession, but the victim's credibility about appellant's actions was bolstered by the fact that the then-23-year-old appellant asked for a 13-year-old girl's hand in marriage. Moreover, after hearing appellant's statement, the immigration court judge found him to be not credible. A jury could well have reached the same conclusion.

The second factor that the United States Supreme Court examined in *Lee* was a comparison of the potential consequences after a trial and the consequences that flowed from a plea. The *Lee* opinion is vague about the benefit that the defendant received except to say that it was a reduced prison sentence. In the case at bench, however, appellant, who had sexual intercourse with a 13-year-old girl and was convicted of committing a lewd act with a child under the age of 14, received significant benefits from his plea agreement. He was granted probation with only six days of local custody,

14

which he had already served, and some community service, and was spared what could have been a mandatory state prison term (§ 1203.066, subd. (a)(8)), ranging from three to eight years.

The final factor that the United States Supreme Court examined in *Lee* was the importance of immigration consequences to the defendant. The defendant in *Lee* repeatedly asked his attorney about immigration consequences and was erroneously assured that there were none. The defendant in *Lee* balked when the judge who was taking his plea gave him an admonition that parallels the requirements of section 1016.5. He proceeded with the plea only when his trial counsel again assured him that he would not be removed. None of these actions are present in the case at bench. Indeed, immigration consequences apparently only became important to appellant nine years after his plea when he learned that he was to be removed.

Based on an evaluation of all of the circumstances in the case at bench, we do not believe that appellant has carried his burden of establishing prejudice.

As the United States Supreme Court noted in both *Padilla* and *Lee*, "[s]urmounting *Strickland*'s high bar is never an easy task." (*Padilla*, *supra*, 559 U.S. at p. 371; see *Lee*, *supra*, 137 S.Ct. at p. 1967.) It is important to recognize that while appellant has a significant interest in the outcome of the case, there is also a strong societal interest in the finality of cases, an interest that can only be overcome upon the clear demonstration of a miscarriage of justice. If that was not the case, literally thousands of cases would be subject to being vacated and, in many cases, rendered immune from

prosecution.  Such a result would be particularly egregious in the circumstances of this and similar cases where a defendant is attempting to hold his or her trial counsel to a standard that not only did not exist at the time of his plea but which had been specifically rejected by appellate courts.

## DISPOSITION

Appellant has not carried his burden of establishing either deficient performance or prejudice.  The order denying appellant's motion to vacate his 1998 guilty plea is affirmed.


HALL, J.*

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.


---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.