Filed 7/17/15  P. v. Brittain CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E059654 |
| v. | (Super.Ct.No. RIC354954) |
| JESSE BRITTAIN, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge.

Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2011, defendant Jesse Brittain[1] admitted that he was a sexually violent predator (SVP) and waived a trial on this issue. Accordingly, the trial court ordered him committed as an SVP; however, because the relevant law was in flux at the time, it did not determine the duration of the commitment.

In 2013, defendant filed a motion to set aside his admission, based on alleged duress. The trial court denied the motion, "without prejudice [to] rais[ing] this issue at a later date with live testimony." At the same time, because the law regarding the duration of the commitment had since become settled, it ordered that defendant's commitment be "for an indeterminate term."

Defendant now contends:

1. The trial court erred by denying defendant's motion to set aside his admission.

2. As a result of amendments to the Sexually Violent Predator Act (Act) that went into effect on January 1, 2014, the Act violates due process and equal protection.

We will hold that the trial court did not err by denying defendant's motion without prejudice. We will further hold that defendant cannot properly raise the constitutionality of the Act as amended in this appeal. Hence, we will affirm.

---

[1] Defendant claims that this court has granted him protective disclosure, ordering "that he be referred to as J.B." He does not cite the order by date, and we have not found any such order. Hence, we use his full name.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 1999, the People filed a petition to commit defendant as a sexually violent predator.

On July 7, 1999, the trial court found probable cause to believe that defendant was likely to engage in sexually violent predatory behavior. It ordered him housed at a state hospital pending trial.

A jaw-dropping number of continuances followed. The case almost went to trial in 2003, but defendant moved to replace his appointed counsel; when that was denied, he moved to represent himself, which was granted. The case almost went to trial again in 2009, but defendant suffered a heart attack.

Meanwhile, in 2006, the Act was amended so as to change an SVP commitment from a two-year term, which could be extended if the People proved that the person was still an SVP, to an indefinite term, which can be terminated if the person proves that he or she is no longer an SVP. (See *People v. McKee* (2010) 47 Cal.4th 1172, 1186-1188, and authorities cited.)

On April 11, 2011, defense counsel indicated that defendant intended to admit the allegations of the petition and waive a trial. She also stated that he would be waiving his personal appearance because "[h]e's had three subsequent heart attacks and he can't be transported."

On June 2, 2011, defendant filed a written admission that he was a sexually violent predator. It included a waiver of his personal appearance.

At a hearing on that same date, defense counsel stated that he had submitted a proposed order to the effect that defendant "waives and stipulates [that] he meets the criteria; however, proceedings are suspended pending the resolution of People versus McKee . . . ."[2]

The trial court observed, "We've actually made a determination if he fits within the provisions of [Welfare and Institutions Code section] 6600, but the length of his commitment is something that's not determined." The prosecutor and defense counsel

---

[2] On January 28, 2010, the California Supreme Court had issued its opinion in *People v. McKee*, *supra*, 47 Cal.4th 1172. There, the defendant argued, among other things, that the indefinite commitment of SVP's, but not mentally disordered offenders (MDO's) or persons found not guilty by reason of insanity (NGI's), violated equal protection. (*Id*. at pp. 1183-1184.) The Supreme Court held that, for purposes of indefinite commitment, SVP's are similarly situated to MDO's and NGI's. (*Id*. at pp. 1202-1207.) It remanded with directions "to determine whether the People . . . can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id*. at pp. 1208-1209, fn. omitted.)

When defendant made his admission, the proceedings on remand in *McKee* were still pending.

On July 24, 2012, the Court of Appeal for the Fourth District, Division One issued its opinion on remand in *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*). It held that the indefinite commitment of SVP's did not violate equal protection, even under strict scrutiny, because "the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*Id*. at p. 1331; see also *id*. at pp. 1340-1348.) On October 10, 2012, the California Supreme Court denied review in *McKee II* (S204503).

agreed with this. The trial court also stated, "I'll just leave it to counsel to make sure you put this back on the Court's calendar . . . ."

Accordingly, the trial court entered an order accepting defendant's admission and committing him to a state hospital. However, it also ordered that "further proceedings . . . be suspended pending the finality of proceedings in . . . People vs Mc[K]ee . . . ."

On July 29, 2013, defendant filed a motion to set aside his admission on the ground that he had executed it under duress. The motion was supported by defendant's declaration. He stated that he suffered from "a chronic heart condition." Back in 2011, he stated, "I was told I would be transported to Riverside. My treating doctors at the time advised against this. I requested the trial be conducted by video conference, but my attorney advised the court and DA would not accommodate my request. I was advised the only way I could avoid being transported was to sign an Admission and Waiver. . . . I feel I really had no choice in the matter, to avoid transportation." He added, "During these 2 years my heart condition has improved, and I feel I am strong enough to deal with the petition."

Defendant also testified — presumably by way of explaining why he had not brought the motion sooner — "I was never advised by the Public Defender's Office the court had accepted the Admission and Waiver until June 2013."

5

In opposition to the motion, the prosecution argued that: (1) the trial court did not have the authority to hear the motion because there was already a final judgment; (2) the motion was untimely; (3) recitals in defendant's admission contradicted his declaration; and (4) defendant had only shown that he regretted making his admission.

On August 23, 2013, at the hearing on the motion, the trial court outlined its tentative ruling. It stated, "This gentleman is asking me to set aside an admission based on his word in a declaration, not subject to cross-examination. You know, I would not be adverse to setting it for a motion hearing with him here subject to cross-examination, but my understanding is he doesn't want to come down. [¶] . . . I'm inclined to deny this without prejudice for us actually calendaring a motion. Let him have a motion, let [the prosecutor] cross-examine . . . ."

In the ensuing discussion, the trial court indicated that it had "just thought of" an alternative reason for denying the motion: "[H]e raises an issue that could, I think, justify a hearing. . . . [But] is this a hearing in the manner that we're doing it, or is it a hearing on something like a writ of habeas corpus?" "[H]e's coming in to set aside a plea two years after the fact. Isn't that something for a writ of habeas corpus, and then if I find that there is good grounds, we would then have a hearing and he could testify in that."

At the end of the hearing, the trial court took the matter under submission; it explained, "I want to do a little research . . . . I'm shooting a little from the hip right now . . . ." Thereafter,[3] the trial court denied the motion, without prejudice. It stated, "[Defendant] may raise this issue at a later date with live testimony."

On August 27, 2013, the trial court ordered that defendant's commitment be "for an indeterminate term."

## II

### THE DENIAL OF DEFENDANT'S MOTION TO SET ASIDE HIS ADMISSION

Defendant contends that the trial court erred by denying his motion to set aside his admission.

A. *The Preclusive Effect of the 2011 Commitment Order*.

Preliminarily, the People argue (as they argued below) that the 2011 commitment order was a final judgment, which therefore barred defendant's motion to set aside his admission.

In deciding whether an order is a final judgment, "'"[i]t is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of

---

[3] Defendant takes the position that the trial court ruled on August 23 (i.e., later the same day). The People take the position that it ruled on August 27. The relevant minute order is unclear on this point. We need not resolve this dispute, as we cannot see how it is material in any way.

7

compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.'" [Citation.]" (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5, italics omitted.)

In 2011, the trial court stated, on the record, that it was determining that defendant should be committed, but it was not determining how long he should be committed for. The prosecution and defense counsel concurred. The trial court therefore ordered that defendant be committed, but not for any particular period of time. It ordered that the proceedings be suspended until *McKee II* became final; thus, the order expressly contemplated further proceedings. Plainly, at least one crucial issue, the duration of the commitment, was left for further consideration. Hence, the 2011 commitment order was not a final judgment.[4]

Even assuming the 2011 commitment order *was* a final judgment, defendant's motion *still* was not barred. "SVP trials are '"special proceedings of a civil nature,"' wholly unrelated to any criminal case. [Citation.]" (*Moore v. Superior Court* (2010) 50 Cal.4th 802, 815.) In civil cases, "[d]uress has . . . been recognized as a ground justifying relief from a final judgment. [Citations.]" (*In re Marriage of Baltins* (1989) 212

---

[4]  It could be argued that the trial court erred by committing defendant without determining the duration of the commitment. Even if so, however, the error was clearly invited and/or forfeited. It does not change the *effect* of the order.

Cal.App.3d 66, 83.)  Moreover, even in criminal cases, a guilty plea can be withdrawn based on duress (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416), and a motion to withdraw a guilty plea can be brought after judgment.  (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1617; see also *People v. Gari* (2011) 199 Cal.App.4th 510, 522-523 [motion to withdraw plea after judgment is equivalent to a petition for writ of *coram nobis*].)

The People cite *People v. Picklesimer* (2010) 48 Cal.4th 330.  That case, however, dealt with a postjudgment motion for relief from the statutory sex offender registration requirement.  (*Id*. at p. 336.)  It is not controlling in a civil proceeding.  Moreover, the court stated that "' . . . *In most cases*, after the judgment has become final, there is nothing pending to which a motion may attach.'  [Citation.]"  (*Id*. at p. 337, italics added.)  It acknowledged that "exceptions to the rule precluding postjudgment motions exist . . . ."  (*Ibid*.)  Thus, *Picklesimer* cannot be understood as overruling long-standing authority that a motion to withdraw a guilty plea can be brought after judgment.

The People also argue that, in 2012, when the decision in *McKee II* became final, it became clear that defendant's commitment should be for an indefinite period; thus, the trial court did not need to take any further action, and the 2011 commitment order became final at that time.  In 2011, however, the trial court had not specified that the commitment was for an indefinite period.  Moreover, it made it clear that it intended to take some further action after *McKee II* became final; it noted that, at that time, counsel would have

9

to put the case back on calendar. Its order could not magically become final in the absence of the intended further action.

We therefore conclude that defendant's motion was not barred.

B.    *The Merits of the Denial.*

The parties seem to have different understandings of the trial court's reasons for denying the motion.

Defendant claims the trial court "most likely" ruled that, because there was already a final judgment, defendant's only remedy was to file a habeas petition. If that had been its reasoning, however, it would have either (1) denied the motion outright or (2) denied the motion specifically without prejudice to a habeas petition. Instead, it denied the motion without prejudice to "rais[ing] this issue at a later date with live testimony." A habeas petition may be summarily denied if it fails to make a prima facie showing of a right to relief. (*People v. Romero* (1994) 8 Cal.4th 728, 737.) Thus, a habeas petition does not necessarily entail live testimony. Indeed, in our experience, only a small minority of habeas petitions result in an evidentiary hearing. Taking the trial court at its word, then, it seems that it was concerned with defendant's failure to present live testimony, not with his failure to file a habeas petition.

The People, on the other hand, argue that the trial court *could* properly deny the motion because defendant failed to prove duress. Alternatively, they suggest that it *could* properly deny the motion as untimely. Again, however, had the trial court *actually* denied

10

the motion on these grounds, it would have denied the motion outright; it would not have allowed defendant to renew it if supported by live testimony.

The key issue, then is whether the trial court could properly deny the motion, without prejudice, because it was not supported by live testimony. We conclude that it could.

"Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, *unless the court orders otherwise for good cause shown*." (Cal. Rules of Court, rule 3.1306(a), italics added.) We review a ruling with respect to the presentation of oral testimony on a motion for abuse of discretion. (*California School Employees Assn. v. Del Norte County Unified Sch. Dist.* (1992) 2 Cal.App.4th 1396, 1405.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Here, defendant's declaration was conclusory. For example, it was not specific about the nature of defendant's "heart condition" (which, although "chronic," had recently "improved"). It was not clear how much of a threat transportation had really posed to defendant's health back in 2011. And, as the People point out, it was not clear who had "advised" defendant that the only way he could avoid transportation was to sign

11

the admission.  The declaration implied that defendant's doctor(s) and lawyer(s) could support — or refute — his claims.[5]

There was also significant ambiguity about the reason for defendant's delay in bringing the motion.  He testified that his defense counsel had not told him until 2013 that his admission had been accepted.  However, he did not testify that he did not learn this from some other source.  He did not explain why he did not make an effort earlier to find out what was going on with the admission.  And he did not testify that this was *actually why* he had not filed the motion sooner.  Hence, the trial court could rationally choose to require live testimony.

Indeed, we question why defendant did not simply refile his motion with a request for an evidentiary hearing.  Defendant seems to suggest that it was an error for the trial court not to set an evidentiary hearing on its own.[6]  Defense counsel, however, never requested an evidentiary hearing.  The trial court stated, "my understanding is [defendant] doesn't want to come down."  Defense counsel did not contradict this.  Quite the contrary, he suggested, "Why don't we continue the motion for 30 days, I'll write [to defendant] and . . . suggest that he come down."  Thus, he indicated that, even assuming an evidentiary hearing was necessary, defendant might choose not to avail himself of one.

---

[5]     The declaration had the effect of waiving the physician-patient privilege and the attorney-client privilege.  (Evid. Code, § 912, subd. (a).)

[6]     For example, defendant says, "[defendant] merely contends that his motion in the trial court provided enough information to create the potential existence of good cause such that an evidentiary hearing was required."

We cannot say that the trial court erred by not forcing defendant into an evidentiary hearing if he did not want one.

In our view, defendant still has the option of filing a new motion to set aside his admission on remand, provided he offers to support it with live testimony. We do not mean to suggest that this is his only option; it is conceivable that a habeas petition or a *coram nobis* petition might also be an appropriate vehicle for defendant's duress claim. We also do not mean to suggest that such a motion should (or should not) be granted. For example, with the passage of time, the issue of defendant's diligence in bringing the motion looms ever larger.

In sum, then, we conclude that the trial court did not err by denying defendant's motion without prejudice.

III

DUE PROCESS AND EQUAL PROTECTION

According to defendant, under amendments to the Act that became effective on January 1, 2014, a person committed as an SVP can petition for unconditional release only if he or she has the concurrence of the Department of State Hospitals (Department). Absent the Department's concurrence, the person can only petition for conditional release, and then, after a year of conditional release, for unconditional release.

In addition, according to defendant, under the same amendments, when a person committed as an SVP seeks conditional release with the concurrence of the Department,

13

the People have the burden of proving unsuitability; absent the concurrence of the Department, the person has the burden of proving suitability.

Defendant contends that these amendments violate equal protection, because they discriminate impermissibly between SVP's on the one hand and MDO's and NGI's on the other. He also contends that they violate due process when applied to a person who has been committed indefinitely.

We cannot reach any of these contentions because they were not raised below.[7] As a result, there is no ruling by the trial court presenting these issues for us to review.

In 2013, the trial court ordered defendant committed for an indefinite term. However, the relevant amendments to the Act had not yet gone into effect. Thus, defendant does not contend that that order was erroneous when made; he merely contends that his indefinite commitment has become unconstitutional since then.

If the only problem were that defendant failed to raise the issue in the trial court, it could be argued that we have discretion to reach it anyway, because it presents a pure question of law on undisputed facts. (See, e.g., *People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1370.) The problem, however, is more fundamental. It is that "[n]o ruling was made below. Accordingly, no review can be conducted here. '[T]he absence

---

**7** This includes defendant's contentions regarding the construction of the amendments. In other words, we are not deciding whether the amendments do what defendant says they do.

14

of an adverse ruling precludes any appellate challenge.' [Citation.]" (*People v. Rowland* (1992) 4 Cal.4th 238, 259.)

Defendant has not argued that he has no way of raising the issue in the trial court. It would seem that all he has to do is file a petition for immediate unconditional discharge, then raise his present arguments in that proceeding.[8] In any event, we need not definitively determine the appropriate procedural vehicle for defendant's contentions. Whatever it may be, it is not this appeal.

IV

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

---

[8] This assumes, of course, that defendant is otherwise qualified for immediate unconditional discharge — i.e., that he is no longer an SVP. If not, then he lacks standing to raise his due process and equal protection arguments.